

# NATIONAL FORENSIC CONSULTANTS, INC.

**717-H FELLOWSHIP ROAD**
MOUNT LAUREL, NJ 08054
PHONE: 856-793-0574
FAX: 856-793-0575
mountlaurel@nfcexperts.com

**190 W. GERMANTOWN PIKE**
SUITE 160
NORRISTOWN, PA 19401
PHONE: 610-278-7620
FAX: 610-278-7625
norristown@nfcexperts.com

**NATIONAL PHONE NUMBER**
800-738-7620

**NATIONAL FAX NUMBER**
800-391-6275

**INTERNET ADDRESS**
www.nfcexperts.com

**REPLY TO**
MOUNT LAUREL

**OTHER AREAS SERVICED**
NEW YORK, NY
BOSTON, MA
ST. PETERSBURG, FL
DALLAS, TX
RICHMOND, VA
PITTSBURGH, PA
LOS ANGELES, CA
NEW ORLEANS, LA
RALEIGH, NC
HARRISBURG, PA
NEWTON, NJ
HARTFORD, CT
BALTIMORE, MD
WILMINGTON, NC

January 27, 2006

Ms. Lisa Stewart
**Erie Insurance Group**
P.O. Box 176
Woodstock, MD 21163

Subject:  Insured:    Wuerstlin's Appliance Service
          D/O/L:      05/09/2005
          Your File:  010210545967
          NFC File:   DC-16790-OC

Dear Ms. Stewart:

On or about May 9, 2005 a fire occurred in a Bosch dishwasher, resulting in physical damage to the kitchen and significant smoke and soot damage to valuable woodwork, furniture and artifacts. We received the assignment on June 22, 2005 and on Monday, June 27, 2005 a site inspection was performed to determine the cause and origin of the fire.

## Inspection

1. The site was inspected, assisted by lawyers and security personnel.

2. The fire clearly originated at the dishwasher.

3. The dishwasher had been removed as retained evidence. Consequently, an inspection of the dishwasher was not possible at the time of the site inspection.

## Evidence Inspection Of August 4, 2005

1. The retained evidence inspection occurred at the office and storage facility of Michael E. Schaal, CFI, in Pasadena, MD.

Ms. Lisa Stewart  
**Erie Insurance Group**

January 27, 2006  
NFC File: DC-16790-OC

Page 2

2. The dishwasher was identified as Model No. SHY66C05UC/14, Serial No. FD8304 00505, 120 volt, 12.0 ampere, 60 Hz. The UL listing number is E183022.

3. The steel shell of the dishwasher showed a burn pattern appearing to emanate from the bottom.

4. The bottom wire dish rack was fused to the bottom and contained silverware and the remains of plates. The bottom screen was stuck to the wire rack.

5. The door was detached. There were no anomalies noted on the door, except burn patterns indicating the heat source below the door.

6. The controls and mechanisms located in the bottom of the dishwasher unit were virtually fused into a large carbonized blob.

7. A flat steel wire, apparently a fish tape was found in the blob on the bottom side. This was apparently stuck in the floor from a previous installation.

8. The power wiring was 14-2 type NM non-metallic sheathed cable.

9. The center water return strainer had a fork stuck in it.

10. Inspection of the wiring and devices revealed no anomalies. It was agreed that the fused blob should be x-rayed to reveal any unseen anomalies.

## Review Of X-Rays

On September 14, 2005 I received and reviewed a CD containing copies of 22 x-ray photographs of the dishwasher fused material. Review of these x-rays showed no evidence of any anomalies in the wiring, such as melting or arcing.

## Inspection Of October 25, 2005

In light of the absence of any noteworthy anomalies in the retained physical evidence, a destructive inspection was recommended and scheduled for October 25, 2005. A protocol was written for this procedure.

Ms. Lisa Stewart  
Erie Insurance Group  

January 27, 2006  
NFC File: DC-16790-OC  

Page 3

1. The evidence was again thoroughly inspected visually. There was no observed evidence of any electrical anomalies. The windings of both the motors and the solenoid coils all appeared to be intact, with the copper coloring still on the windings.

2. Since the Bosch representative chose not to attend the inspection, there was no way to verify the identity and function of displaced electrical wires and components without detailed wiring information and the presence of an exemplar. Consequently, Ken McLauchlan recommended termination of the inspection until an exemplar and more information were obtained.

3. The inspection was terminated pending attaining further information.

## Analysis

1. Of greatest interest is the heating element, a source of combustion energy, and the circulating motor assembly, which was replaced under warranty by the insured on August 11, 2004. The heat pattern around the flow-through heater should provide a determination as to whether the heat damage is internal or external.

2. Inspection of the motor winding may show whether the motor overheated internally.

3. Presently, there is no visual evidence of electrical anomalies, nor is there x-ray evidence of electrical anomalies.

4. The successful operation of the replaced pump assembly by the insured for about nine months indicates a proper installation.

## Conclusion

At this time no conclusion can be made regarding the cause of the loss. The most probable cause is heat from the flow-through heater, since there is no apparent evidence of faulty connections, arcing or melting of wiring or components.

The additional inspection should assist in elimination of the various suspected devices which are connected to 120 volt power and represent the greatest potential for ignition.

I reserve the right to supplement or amend these findings and/or opinions should new information become available.

NATIONAL FORENSIC CONSULTANTS, INC.

Ms. Lisa Stewart  
**Erie Insurance Group**

January 27, 2006  
NFC File: DC-16790-OC

Page 4

If you have any questions or comments, please call me at 410-877-3507.

Sincerely,

*Terrence L. DuVall/meg*

Terrence L. DuVall, P.E.  
Senior Consultant

/meg