IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| FEDERAL INSURANCE COMPANY | C.A. NO. 1:06CV00379. |
| and | Judge Alan Kay |
| HARTFORD CASUALTY INSURANCE COMPANY | |
| Plaintiffs | |
| v. | |
| LANDIS CONSTRUCTION CORPORATION | |
| and | |
| WUERSTLIN APPLIANCE SERVICE | |
| and | |
| MR. PAUL SCUDERI | |
| Defendants. | |

EXHIBIT A TO MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY

Law Offices

## McCarthy Wilson
A Limited Liability Partnership
100 South Washington Street
Rockville, Maryland 20850

(301) 762-7770

Fax  (301) 762-0374

E-Mail ATTYS@McWILSON.COM

Charles E. Wilson, Jr.
Thomas Patrick Ryan
Robert B. Hetherington
Edward J. Brown
Charles E. Wilson III
David L. Rubino
Richard W. Evans
Jonathan R. Clark
André M. Forté

Joseph S. McCarthy
(1918-1983)

Ronald W. Cox, Jr.
Amy L. Leone
Shari Cohen Boscolo
Scott D. Nelson
Matthew S. Tidball
Nicholas Andrews
Michael B. De Troia
Jeffrey W. Stickle
Marisa R. Schollaert
Timothy D. Fisher
Megan M. Brennan
Kathryn E. Bonorchis

## FACSIMILE TRANSMITTAL

**Number for Fax Machine: (301)762-0374**

Date: 12/21/07     No. of Pages (Incl. cover): 14

To: MARK VTKL / BRIAN TETRO  215-7896170

Fax Number: 215 665 2013    File No.: Wuerstlin

From: Bud Brown    ANSA & J. Rego

Comments: Enclosed please find Δ's Expert's Draft Report. We still need responses to our damages inquiries (photos, measurements, etc) + re-convene the P's dpos in order to finalize same.

**If there are problems with the transmittal, or if you do not receive all pages, please contact sender at above number.**

Confidentiality Note: The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this telefax is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the above address via the mail. Thank you.

I have deleted the work product designation, as legal analysis is not included. Thanks —



**Martin Churchill Associates, Inc.**

640 19TH STREET, SOUTH
ARLINGTON, VIRGINIA 22202
(703) 979-3410
FAX (703) 979-7537
Email: martinch@erols.com

December 19, 2007

Mr. Edward Brown
McCarthy Wilson
100 South Washington Street
Rockville, Maryland 20850

Re: Beverly Bernstein - Fire and smoke damage claim
Claim No. Case #1:06CV00379

Dear Mr. Brown:

Enclosed please find our draft report on the home of Beverly Bernstein, at 3246 N Street, N.W., Washington, D.C., which was involved in a recent fire and smoke damage claim. You have requested that we review documents relating to the claim and provide our opinion of the appropriateness of the charges submitted by the claimant.

In summary, we found questionable charges relating to the building restoration, contents damage, art restoration and additional living expense. We have not submitted a final appraisal, pending your advice on the District of Columbia's statutes regarding depreciation, Actual Cash Value, Additional Living Expense and other issues.

Also enclosed is our invoice covering the actual costs involved in investigating and reporting on this assignment. Please feel free to call if we can be of further service.

Sincerely,

Martin L. King, ASA, CR
Martin Churchill Associates, Inc.



**Martin Churchill Associates, Inc.**

640 19TH STREET, SOUTH
ARLINGTON, VIRGINIA 22202
(703) 979-3410
FAX (703) 979-7537
Email: martinch@erols.com

# DRAFT/~~WORK PRODUCT~~

EVALUATION OF FIRE DAMAGE CLAIM

OF BEVERLY BERNSTEIN, WASHINGTON, D.C.

Claim No. Case #1:06CV00379

MCA Contract No. 8776

December 19, 2007

Prepared by

MARTIN CHURCHILL ASSOCIATES, INC.

*Martin L. King*

Martin L. King, ASA, CR, President

CERTIFICATE OF APPRAISAL

This appraisal has been made for an insurance claim, and is based on photographs, building descriptions, depositions, contract specifications, estimates and other documents provided with the assignment. Direct inspection of the site was not performed for this appraisal, which is hypothetical, in the absence of direct inspection of the damage. According to our best belief and knowledge, the findings shown in this report are true and correct to a reasonable degree of appraisal certainty. All information regarding the nature of the occurrence was provided with the assignment. No attempt was made to independently verify the ownership of the property, the identities of the participants, the date of the incident, or the accuracy of the documents provided. This report may be modified in light of additional information.

No opinion is offered regarding the existence or absence of any insurance policy or the applicability of any policy to the property in question. The inspector has had more than twenty-five years' experience in damage investigation and appraisal in the Maryland-Virginia area, and holds the designation Accredited Senior Appraiser, by the American Society of Appraisers, and Certified Restorer by the Restoration Industries Association.

In preparing this appraisal use was made of various guides, manuals and reference materials customarily used in professional appraisal practice, as well as proprietary materials developed the appraiser. This inspection report has been prepared in conformity with the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers. Martin Churchill Associates, Inc. is an independent inspection and appraisal firm. We certify that we have no interest in the property described herein, and that neither the employment to make the appraisal nor the compensation is contingent on the findings rendered.

Date: December 19, 2007        _____
                               Martin L. King, ASA, CR
                               Martin Churchill Associates, Inc.

Case 1:06-cv-00379-AK   Document 46-4   Filed 01/07/2008   Page 6 of 15
DEC-21-2007 FRI 06:04 PM MCCARTHY WILSON         FAX NO. 3017629079              P. 05

Beverly Bernstein - Fire and smoke                                           Page 4

## INTRODUCTION

On May 7, 2007, Martin Churchill Associates, Inc., was retained by law firm of McCarthy Wilson to review documents relating to the home of Beverly Bernstein, at 3246 N Street, N.W., Washington, D.C., which was involved in an insurance claim. The purpose of the inspection was to evaluate various parts of Mrs. Bernstein's insurance claim as they might relate to a subrogation action involving Wuerstline Appliance Service.

Following a telephone call from Mr. Edward Brown, an attorney with McCarthy Wilson, of 100 South Washington Street, Rockville, Maryland, the case was assigned to Martin L. King, ASA, CR, a damage investigator and appraiser with over 25 years of experience in this area.

## BACKGROUND

It is our understanding that on May 9, 2005 the Bernstein residence sustained a kitchen fire that distributed significant smoke to the first and second floors. The building is an old Georgetown residence occupied by the owner, and contained two apartments above the owner's living area plus an additional seven apartments in a rear addition. The building was originally constructed in the 1800s, and had a major renovation around 1966, when it was acquired by the current owners.

At the time of the fire the owner's portion of the residence had been fully restored and decorated to what was described as a high standard of quality. The interior furnishings were of equivalent quality, and included furniture and artworks of considerable value.

After the fire emergency services were performed and the contents of the house were packed and moved to other locations. Invoices for these services were provided by various firms retained by the owner and her agent, Goodman, Gable and Gould, Public Adjusters. The building insurance carrier was Hartford Insurance Co., with the adjustment handled by Mr. Larry Wood. Antonucci Consulting Corporation was retained to estimate and oversee the construction work for Hartford, and Ms. Margaret Rubino oversaw the work for the owner. Ms. Rubino served as the personal assistant to Mrs. Bernstein and was also affiliated with Rooms and Gardens, a local design firm. In addition to Mr. Antonucci's reconstruction estimate of $490,136.90, Rolyn Construction prepared a reconstruction estimate in the amount of $745,993.49.

The contents and fine arts losses were covered by Chubb and adjusted by Martin Anderson, its senior General Adjuster. Ms. Rubino played a major role in the selection and coordination of specialty restoration firms for the building as well as the contents and fine arts. The overall contents claim of 583,281.97 included art restoration by Olin Conservation in the amount of $171,052.64. Also included were rug and tapestry restoration, furniture restoration, and the replacement of draperies and other fabrics.

Beverly Bernstein - Fire and smoke                                    Page 5

In order to determine the appropriate response to a subrogation action, McCarthy Wilson requested that Martin Churchill Associates, Inc., perform an independent inspection of the various estimates, records and photographs, and submit a report of their findings.

**DOCUMENTS PROVIDED FOR THIS REPORT**

With the assignment, the appraiser was provided with a number of documents, including the following:
Deposition Transcript of Christopher Landis
Deposition Transcript of Paul Scuderi
Curriculum Vitae of Michael Schall
Plaintiff's Joint Expert disclosures
SEA Report
McLaughlin & Associates' Report
Michael Schaal Report
Plaintiff's Answers to Interrogatories
Insurance Policy
Photographs
Antonucci Consulting Corporation's estimates and revisions
Rolyn Construction's estimates
Personal property claims summaries and invoices
Claims Summary Sheets
Itemized descriptions and Proposal for Treatment from Olin Conservation, Inc.
A Retrospective Value Appraisal by Donald S. Boucher
Copies of communications between adjusters, the insurers and claimants


**THE DAMAGE**

The actual fire damage was confined to the kitchen and was not severe enough to require structural repairs. Smoke damage extended to other areas, most significantly the first and second floor living areas. The smoke damage was described as heavy by some observers. This description was not borne out by the photographs, which showed damage in the adjacent rooms to be moderate, the original coloration and details of surfaces remaining clearly visible rather than masked by smoke particles. While the humidity level may have been elevated after the fire, it would have been transient and apparently was not sufficiently high as to require dehumidifiers or other drying mechanisms as part of the emergency services. There was no evidence of saturation or standing water.


**DISCUSSION**

According to various reports and appraisals, the building, its finishes and much of the personal property were unusual, rare and costly. However, the cost of fire damage restoration is determined by the severity of the damage as well as the value of the affected

Case 1:06-cv-00379-AK   Document 46-4   Filed 01/07/2008   Page 8 of 15
DEC-21-2007 FRI 06:04 PM MCCARTHY WILSON          FAX NO. 3017629079                P. 07

Beverly Bernstein - Fire and smoke                                       Page 6

items. The descriptions of many of the items indicate that prior distress, unrelated to the smoke damage, was a significant factor in their restoration cost. This applies to the furniture restoration, Oriental rug and tapestry restoration and art restoration. However, prior distress was not documented in most of the estimates and invoices, most conspicuously those relating to the building repairs. In its evaluation of the building's overall insurable value, Hartford Insurance applied overall depreciation of 42%, apparently based on the building's age. However, we have been able to find no consideration of the age and condition of paint, floors, fixtures and trims. For some items, fine cleaning was found appropriate, while other items (for example the upholstery) do not appear to have received careful restoration or evaluation. There does not appear to have been a serious attempt by either insurer to consider the pre-fire condition of finished building surfaces or contents. Since no documentation existed regarding age and condition, questions of depreciation and actual cash value cannot be established and do not appear to have been considered in the restoration decisions or claim settlements. The cleaning services provided by Begal were charged on a labor and material basis with no description of the specific work performed or its results.

Overall, the restoration work appears to have been determined entirely by the owner's preferences, as expressed by Ms. Margaret Rubino, the personal assistant to Mrs. Bernstein. The documents showed no evidence of independent adjuster decisions or opinions regarding the scope of work or its costs. Ms. Rubino appears to have been the sole arbiter of what work was to be performed and by whom. Ms. Rubino logged over 100 hours on this project, which she described as: *"acting as her (Mrs. Bernstein's) 'alter-ego' being on site to manage and make decisions, meeting with you all (Goodman, Gable and Gould), taking BB to the vault, researching the "vendors", meeting with them and coordinating who is taking what and when..."* This "claimant's choice" approach appears to characterize the entire claim. The exercise of effective adjuster oversight was not in evidence.

**ART RESTORATION**

Olin Conservation submitted a detailed listing of 67 artworks, including their locations, pre-fire condition and fire-related damage. Olin's quote for preparing the inventory was $2,900.00. The total price for their restoration, including rehanging, was $149,459.04.

According to Olin, most of the artworks showed pre-existing distress or evidence of inept past restoration. The pre-existing damage appears to be far more significant than the fire damage in many instances. Fully half of the artworks were described as having "minor," "small amounts" or "minimal" soot deposits. Some of the distress was ascribed as a "typical" result of high humidity, or have been augmented or caused by humid conditions, without directly stating that fire-related conditions were the cause.

In Olin's proposal the removal of smoke residue uniformly consisted of wiping with "a dilute aqueous solution applied by swab." A great number of the artworks were to be disassembled and the original mats and backings replaced with "acid free museum quality materials", acid-free foam core or interleaf sheets, and uv-filtered glass "according to

Case 1:06-cv-00379-AK   Document 46-4   Filed 01/07/2008   Page 9 of 15
DEC-21-2007 FRI 06:05 PM MCCARTHY WILSON   FAX NO. 3017629079   P. 08

Beverly Bernstein - Fire and smoke                                   Page 7

museum standards," disregarding the fact that artworks under glass are seldom infiltrated by smoke and the original installations were clearly not assembled to museum standards.

Reading through the Olin quote suggests that the treatments it proposes would bring the collection to far better condition than existed before the fire. However, the improvements are not sufficient to explain all of Olin's extremely high charges, first pointed out by Stephanie Kenyon, director of Sloan and Kenyon Galleries, who reviewed Olin's proposal at length.

In an effort to determine appropriate prices, Olin's inventory and descriptions were submitted—with prices deleted—to a well-established local restoration firm, Fine Arts Restoration, of Arlington, Virginia. Fine Arts Restoration priced each item, quoting a range of prices to accommodate uncertainties. Their restoration proposal was based on the descriptions of condition and damage provided by Olin. Fine Arts Restoration quoted a price of $28,600 to $52,200 for the work proposed by Olin. A summary comparison of the restoration charges is attached.

The gross disparity in restoration costs raises a question of how the Chubb adjustor could accept Olin's quote without bringing in at least one independent expert. The adjuster's job is to reach a fair and judicious settlement. Where subrogation is a possible issue, the adjustor may be spending the money of other parties. We do not see evidence that judicious oversight was applied to the Bernstein art restoration settlement.

## ORIENTAL RUG AND TAPESTRY RESTORATION

The cleaning of Mrs. Bernstein's Oriental rugs and Aubusson tapestries was assigned to Mark Keshishian & Sons, of Chevy Case, Maryland. Keshishian's estimate of $44,044.51 to "clean, deodorize and restore Oriental carpets, shawls and Aubusson tapestries" contained no descriptions of the quantities, types or sizes of the various items. The charge for cleaning the items was $8.077.00. Also quoted were "Repairs and Restoration" of tapestries in the amount of $28,95 for "restoration, remove and replace old trim and lining material, remove frame and reline tapestry".

These repairs appear to be significant improvements unrelated to the smoke damage. There is no indication that this restoration charge was challenged or questioned by the adjustor. Like Olin's art estimate, its approval suggests a failure to judiciously monitor the insurance settlement.

## DRAPERY AND UPHOLSTERY RESTORATION

The usual configuration of fire damage makes draperies frequent victims of smoke because of their fragile nature, short life span and position high on exterior walls. The selection of drapery replacements after fire damage should be equivalent to the originals in style, fabrics, trims and workmanship. The age and condition of the original draperies are important

elements in their value. The documents provide no descriptions of the existing draperies nor an assessment of their age and condition.

A local interior design firm, Rooms and Gardens, was retained as a consultant by the owner. The records provided no indication that anything other than the owner's preferences (as expressed by Ms. Rubino) were considered in the fabric selection, design and fabrication of the replacements. The settlement was based on replacements that may or may not have been equivalent to the originals.

At some point it was determined that the upholstered furniture could not be successfully cleaned. There was no description of the degree of damage sustained by the upholstery or any restoration procedures that were applied. Upholstery fabrics are vulnerable to smoke residues but the damage can often be reversed with skilled restoration. For example, Period fabrics in museums are often cleaned effectively. We do not know what level of restoration was attempted in this case. However, the same design consultant helped select the upholstery fabrics in conjunction with the draperies, free of any constraints that might be imposed by having to deal with the existing upholstery.

In light of the high costs involved, it would have been a prudent investment for Chubb to retain an independent design consultant to ensure that the contents replacements were appropriate and equivalent.

In this case the result was a complete redesign of the interior that included every cushion, spread, drapery and piece of upholstery, coordinated under the guidance of an interior designer. The only constraints appear to have been the preferences and tastes of the owner. The desire to perform a total redesign of the interior is understandable, and perhaps essential. However, the ability to do so is a luxury that may not conform to the intent of an insurance settlement that may ultimately be borne by others.

## WOOD FURNITURE RESTORATION

The general outline of the fire damage is clear: an appliance and adjacent materials burned, but no significant structural damage; artworks and other kitchen elements sustained heat damage and heavy smoke residues. No fire or significant heat effect was present in the adjoining rooms nor was there evidence of direct water damage. Thus, it comes as a surprise to find repeated mention in the estimate of Richard G. Woods—addressed to Rooms and Gardens—of repairs such as "gluing loose veneer", "replacing missing mouldings", "repair finish and scratches", "swell out dents on top", "glue front leg", "repair inlay", "replace missing carving". These do not relate to smoke damage, but relate closely to wear-and-tear and other distress. Almost every item on his 25 item, $5,915 list contains provisions for such work. This suggests that the furniture was part of the comprehensive Rooms and Gardens redecorating plan performed in the guise of fire damage restoration.

Beverly Bernstein - Fire and smoke                                                     Page 9

## BUILDING REPAIRS

The Antonucci Consulting Corporation was retained by Hartford Insurance to estimate and oversee the fire damage reconstruction. Mr. Frank Antonucci prepared an initial repair estimate in the amount of $285,097.00. Rolyn Construction's estimate for the Bernsteins was $776,407.15. In his December 19, 2005 report to Hartford's adjuster, Mr. Antonucci stated that his consultation with Rolyn induced him to raise his repair estimate to $387,460.00. In that report Mr. Antonucci also stated the following:

*"During our discussions with representatives from Rolyn Construction we were informed that their repair estimate includes bids from various sub-contractors for specific portions of the work (painting, cleaning, doors & windows, carpet, appliances). These sub-contractors, while not Rolyn's choice, have been selected by the insured to perform the work due to previous projects within the building."* The report continues: *"It would appear that Rolyn did not have the opportunity to obtain other competitive bids for the work and were therefore compleeled to use those already selected and reflected in their cost estimate."*

These subcontractor quotes included $34,000 by Hill Enterprises for "refurbishing the den, central hall, living room & great room," with "sanding & top coats along with touch-up", about which Mr. Antonucci commented "We disagree with this level of work for the library paneling, which in our opinion only requires detailed cleaning & polishing to restore the material to its pre-fire condition." Rolyn Construction was also required to include $46,000 for Derby Braun to prepare and paint, and $25,000 for Paula Schumann Studio for faux painting.

These appear to be the initiative of Ms. Rubino, who stated to Jeff Pence (the public adjustor with Goodman, Gable and Gould), that she was *"on site to manage and make decisions....researching the "vendors", meeting with them and coordinating who is taking what and when."* This was consistent with her role in other parts of the claim.

Review of the Rolyn estimate shows unit prices that far exceeded its own normal rates, often by more than 100%. Despite Mr. Antonucci's warnings that it contained excessive scope and charges, Hartford paid Rolyn's $776,407 estimate in full. There was no apparent negotiation and no record of consideration by the adjustor of the actual extent of the damage, Antonucci's comments, prior condition or depreciation.

## ADDITIONAL LIVING EXPENSE

When damage requires an extended time for repair, it is customary for occupants to secure temporary lodging until a suitable rental property can be obtained. On May 9, 2005, the day of the fire, Mrs. Bernstein took lodging at the Georgetown Inn, where she occupied a suite of rooms until March 19, 2006. Invoices show that her lodging expense was approximately $148,000. A large 3-story house in Georgetown (with elevator) was available in 2005 for $5600 per month on a 12-month lease, $6200 per month for a 6-month lease. A year's rental would have been $74,400, to which furniture rental of $18,000 would be added for a

Beverly Bernstein - Fire and smoke                                    Page 10

total of $92,000. Adding three months' temporary rental of $26,640 would bring the total to $118,640, a difference of about $30,000.

## CONCLUSION

After review of the documents and photographs, it is our conclusion that the scope and cost of the fire damage repairs were directed by the owner and her representatives with the acquiescence of the insurers. The lack of control and adjuster constraint is not typical of insurance company behavior on fire losses, and resulted in a project cost that far exceeded the actual damage from the fire.

In the absence of information regarding the District of Columbia statutes on depreciation, actual cash value and other settlement factors, we are not at this time providing a full appraisal of this claim.

Beverly Bernstein - Fire and smoke                                          Page 11

## Comparison of restoration charges
## Olin Conservation, Inc., and Fine Arts Restoration

| No. | Items | Olin Conservation | Fine Arts Restoration | FAR Upper Range |
|---|---|---|---|---|
| B-1 | BW Photograph | 395 | 100 | 150 |
| B-2 | BW Photograph | 395 | 100 | 150 |
| B-3 | BW Photograph | 395 | 100 | 150 |
| B-4 | BW Photograph | 395 | 100 | 150 |
| B-5 | Water color/graphite | 457.50 | 200 | 250 |
| B-6 | BW Photograph | 395 | 100 | 150 |
| B-7 | BW Photograph | 395 | 100 | 150 |
| B-8 | BW Photograph | 395 | 100 | 150 |
| B-9 | BW Photograph | 395 | 100 | 150 |
| B-10 | BW Photograph | 395 | 100 | 150 |
| B-11 | Oil on Panel | 1207.50 | 800 | 1000 |
| B-12 | Oil on Panel | 1962.50 | 600 | 800 |
| B-13 | Water Color on paper | 592.50 | 200 | 250 |
| B-14 | Oil on Panel | 770 | 600 | 800 |
| B-15 | Water color | 520 | 300 | 300 |
| B-16 | Oil on Panel | 645 | 300 | 400 |
| B-17 | Oil on panel | 645 | 500 | 500 |
| B-18 | Gilt, wood mirror | 645 | 200 | 200 |
| B-19 | Pastel on paper, large | 1,187.50 | 200 | 200 |
| B-20 | Oil on Canvas, large | 2,907.50 | 600 | 800 |
| B-21 | Oil on Canvas, large | 3,367.50 | 800 | 1000 |
| B-22 | Charcoal, Pastel on paper | 1,187.50 | 300 | 300 |
| B-23 | Oil on paper, large | 1,152 | 800 | 1000 |
| B-24 | Oil on canvas, large | 1,207.50 | 400 | 400 |
| B-25 | Oil on canvas, large | 395 | 600 | 800 |
| B-26 | Oil on canvas | 4,660 | 600 | 600 |
|  | Frame restoration | 0 | 400 | 600 |
| B-27 | Oil on canvas | 1,847.50 | 600 | 800 |
| B-28 | Gilt wood mirror | 957.50 | 200 | 200 |
| B-29 | Oil on canvas | 2,020 | 600 | 800 |
| B-30 | Oil on canvas, large | 2,207.50 | 200 | 300 |
| B-31 | Oil on canvas, large | 3,852.50 | 1500 | 2000 |
| B-32 | Oil on board, small | 770 | 200 | 400 |
| B-33 | Oil on board, large | 2,120.50 | 600 | 800 |
| B-34 | Oil on canvas | 2,082.50 | 400 | 600 |
| B-35 | Oil on panel, small | 1,582.50 | 800 | 1500 |
| B-36 | Oil on panel, small | 982.50 | 400 | 600 |
| B-37 | Oil on canvas, small | 1,412.50 | 300 | 400 |
| B-38 | Oil on paint (?), small | 1,582.50 | 800 | 1600 |
| B-39 | Oil on canvas, small | 1,157.50 | 300 | 500 |
| B-40 | Oil on canvas, large | 2,020 | 800 | 1000 |
| B-41 | Oil on canvas, large | 4,645 | 1500 | 2500 |
| B-42 | Oil on canvas, large | 7,582.50 | 2000 | 3000 |
| B-43 | Oil on panel, large | 5,450 | 2000 | 3500 |
| B-44 | Ink on paper | 460 | 300 | 300 |
| B-45 | Ink on paper, small | 460 | 300 | 300 |

Beverly Bernstein - Fire and smoke                                          Page 12

| No. | Item | Olin Conservation | Fine Arts Restoration | FAR Upper Range |
|---|---|---|---|---|
| B-46 | Wood mirror | 500 | 200 | 200 |
| B-47 | Water color | 395 | 200 | 200 |
| B-48 | Water color, small | 395 | 200 | 200 |
| B-49 | Water color | 395 | 200 | 200 |
| B-50 | Scroll, watercolor on paper | 395 | 200 | 200 |
| B-51 | Oil on canvas | 2,957.50 | 800 | 1000 |
| B-52 | Oil on canvas, large | 2,582.50 | 600 | 800 |
| B-53 | Oil on canvas, large | 3,270.50 | 1500 | 2500 |
| B-54 | Gilt wood mirror | 1,895 | 600 | 800 |
| B-55 | Oil on canvas | 1,207.50 | 600 | 800 |
| B-56 | Oil on canvas | 1,207.50 | 800 | 800 |
| B-57 | Oil on canvas | 1,207.50 | 600 | 800 |
| B-58 | Oil on panel, smaller | 1,395 | 1000 | 1500 |
| B-59 | Oil on panel, smaller | 1,207.50 | 1000 | 1500 |
| B-60 | Oil on canvas, smaller | 1,863.75 | 600 | 800 |
| B-61 | Oil on canvas, large | 1,707.50 | 600 | 800 |
| B-62 | Ink on paper | 155 | 100 | 150 |
| B-63 | Ink on paper | 562.50 | 200 | 200 |
| B-64 | Oil on canvas, smaller | 988.75 | 600 | 800 |
| B-65 | Watercolor | 395 | 100 | 150 |
| B-66 | Watercolor | 395 | 100 | 150 |
| B-67 | Watercolor, small | 395 | 100 | 150 |
| B-68 | Box of contents, lights & cords | 145 | 200 | 200 |
| B-69 | Ink on paper | 426.25 | 100 | 150 |
| B-70 | Wood, gilt mirror | 2,145 | 400 | 600 |
|  | SUB TOTAL | 98,446.75 | 34,700 | 48,300 |

| Item | Olin Conservation | Fine Arts Restoration |
|---|---|---|
| 1. Treatment Costs | $99,394.75 | $34,700 to $48,300 |
| Documentation | Included in item charges of | Not included, $500 additional |
| 2. Insurance Fees | $3,410 per month, $10,230 (3 months) | $0.00 Owner adds coverage to original policy |
| 3. Overhead, administration, occupational taxes | $7,874.30 | $0.00 included in Treatment Costs |
| 4. Transportation | $3,780.00 | $0.00 included in Treatment Costs |
| Transit insurance | $5,100.00 | $0.00 restorer picks up and delivers individual pieces |
| 5. Reinstallation Option | $4,930.00 | Does not install, additional $3,400 |
| 6. Exam, inventory, triage | $5,780.00 | Not required; included in Treatment Cost |
| 7. Storage fees | $7350.00 | No storage fees for restored items |
| 8. Unauthorized work – handling, storage fees | To be performed at $145 per hour | Not charged. |
| TOTAL | $149,459.04 | $28,600.00 to $52,200.00 |
| DIFFERENCE |  | ($120,859.04) to ($97,259.04) |

L. King
640 S. Nineteenth Street
Arlington, VA 22202
703/979-3410
martinch@erols.com

**Educational Background**

Bachelor of Arts Degree, Economics
George Washington University
Washington, D.C.

Associates Degree, Graphics Engineering
Rochester Institute of Technology
Rochester, New York

Has attended numerous seminars by major trade associations, including: National Association of Home Builders, American Society of Appraisers, National Roofing Contractors Association, National Trust for Historic Preservation, Washington Conservators Guild, the American Society of Appraisers and others.

**Professional Experience**
Over 30 years' years' experience in damage reconstruction and restoration, including corporate management, supervision of field staff, preparation of specifications, estimating, project management.

Founder and CEO of Fire Services Co., Inc., a restoration firm specializing in damage repair; later Exec. Vice President of Knott Restoration Services, Inc. Formerly President of Hallmark Pools, designers & builders of residential swimming pools.

**Publications**
Over 300 articles in trade publications such as *The New England Builder*, *Cleaning & Restoration*, *Claims Magazine*, the *Journal of Light Construction*. Author of audio-visual programs: *Emergency Tips* and *Water Damage: Diagnosis and Repair*. Author of *Advanced Studies in Damage Repair*, and the *ASCR Guidelines for Fire and Smoke Damage Repair*, a widely-accepted industry standard, and the *ASCR Guidelines for Mold Remediation*. He authored the *Recommended Professional Practice for Remediation of Mold Contamination in Residential Interiors* (RIA).

Mr. King currently serves as President and Senior Project Manager of Martin Churchill Associates, Inc., damage investigators and appraisers, and as Technical Advisor to the Restoration Industry Association (RIA).

He has testified as an expert witness in most jurisdictions in the Maryland-DC-Virginia Metropolitan area. Has qualified as an expert witness and presented testimony on roofing, construction practice and costs, ladder safety, foundations, masonry walls, waterproofing, smoke and odor, the effects of fire and water damage on buildings and electronic components, mold remediation and Oriental rug damage. Mr. King has investigated and prepared formal reports on over 1200 structural damage incidents. As an impartial investigator, Mr. King accepts assignments and has testified for plaintiffs and defendants in arbitration and legal proceedings.

Mr. King has provided restoration services and damage consultation for the Smithsonian Institution, the Blair House Historic Trust, the Utah Governor's Mansion, the Joshua Barney house, the Keith-Brown Mansion, the J. Rockefeller Mansion, the Utah State House and the San Francisco Opera House. He provides professional-level classroom training in damage repair and contents restoration through RIA.

His professional designations include Certified Restorer, Restoration Industry Association, and Accredited Senior Appraiser by the American Society of Appraisers, both by examination. He is a past president of the Washington, D.C. Chapter of the American Society of Appraisers.