**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

FEDERAL INSURANCE COMPANY

    and

HARTFORD CASUALTY INSURANCE
COMPANY

    Plaintiffs,

        v.

LANDIS CONSTRUCTION
CORPORATION

    and

WUERSTLIN APPLIANCE SERVICE

    and

MR. PAUL SCUDERI

    Defendants.

Case No. 1:06CV00379
Magistrate Judge Alan Kay

**DEFENDANT LANDIS CONSTRUCTION CORPORATION'S**
**MOTION FOR SUMMARY JUDGMENT**

    Now comes the Defendant, Landis Construction Corporation, by and through their attorneys, Budow and Noble, P.C., and Allan A. Noble, and moves pursuant to Fed.R.Civ.P. §56, for Summary Judgment and for grounds therefore state that there is no genuine dispute of any material fact and this Defendant is entitled to summary judgment as a matter of law, and in support thereof this Defendant refers this Honorable Court to this Defendant's Memorandum of Points and Authorities which is incorporated and adopted by reference herein.

**BUDOW AND NOBLE, P.C.**

_____/s/_____
Allan A. Noble, 166926
Suite 500 West, Air Rights Center
7315 Wisconsin Avenue
Bethesda, Maryland 20814
(301) 654-0896

## CERTIFICATE OF SERVICE

I do hereby certify that a true copy of the foregoing Defendant Landis Construction Corporation's Motion Summary Judgment was electronically filed and served this 2nd day of May, 2008 to the following:

Eric N. Stravitz, Esquire
Mesirow & Stravitz, PLLC
1307 New Hampshire Avenue, NW
Suite 400
Washington, D.C. 20036
*Counsel for Plaintiffs Federal Insurance Company and Hartford Casualty Insurance Company*

Brian E. Tetro, Esquire
White and Williams
1800 One Liberty Place
Philadelphia, PA 19103
*Counsel for Plaintiff Hartford Casualty Insurance Company*

Mark E. Utke, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiff Federal Insurance Company*

Edward J. Brown, Esquire
McCarthy Wilson, LLP
100 S. Washington Street
Rockville, Maryland 20850
*Counsel for Defendant Wuerstlin Appliance Service*

John Rego, Esquire
25 Wood Lane
Rockville, MD 20850
*Counsel for Defendant Paul Scuderi*

_/s/_____
Allan A. Noble

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

FEDERAL INSURANCE COMPANY

    and

HARTFORD CASUALTY INSURANCE
COMPANY

    Plaintiffs,                                                  Case No. 1:06CV00379
                                                                   Magistrate Judge Alan Kay
        v.

LANDIS CONSTRUCTION
CORPORATION

    and

WUERSTLIN APPLIANCE SERVICE

    and

MR. PAUL SCUDERI

    Defendants.

**DEFENDANT LANDIS CONSTRUCTION CORPORATION'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT ITS
MOTION FOR SUMMARY JUDGMENT**

       Comes now the Defendant, Landis Construction Corporation, by and through their

attorneys, Budow and Noble, P.C. and Allan A. Noble, and hereby files this Memorandum

of Points and Authorities in Support its Motion for Summary Judgment.

**I.**     **INTRODUCTION**

       This is a subrogation claim filed by Federal and Hartford Insurance companies to

recover damages stemming from a fire on May 9, 2005 at the residence of Beverly B.

Bernstein located at 3248 N Street N.W., Washington, D.C.  Plaintiffs allege that the fire

started in the right-front quarter panel of a Bosch dishwasher.  Plaintiffs further allege that

the fire started from an improper electrical connection stemming from the dishwasher's

installation in 2003 and/or its repair in August 2004.  Plaintiffs brought this case under a

theory of negligence, breach of warranty and breach of contract against Paul Scuderi (the

electrician for the 2003 renovation), Landis Construction Corporation (the general

contractor (excluding electrical) for the 2003 renovation) and Wuerstlin Appliance Service,

who repaired the dishwasher in August 2004.  Plaintiffs' case against this Defendant

necessarily requires it to prove that Landis was in some way responsible for that

connection.  Discovery has established that there is no evidence that Landis was in any

way responsible for any electrical connection for the dishwasher.  Accordingly, Landis now

moves for summary judgment in its' favor.

## II.    DEFENDANT LANDIS' EXHIBITS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

|  |  |
|---|---|
| Landis Estimate for Bernstein Kitchen dated March 20, 2003 | **Exhibit A** |
| Landis Estimate for Bernstein Kitchen dated April 28, 2003 | **Exhibit B** |
| Excerpts of Deposition of Margaret Rubino dated May 29, 2007 | **Exhibit C** |
| Landis contract with Mrs. Bernstein, dated May 12, 2003 | **Exhibit D** |
| Scuderi Estimate for electrical services dated April 21, 2003 | **Exhibit E** |
| Excerpts of Deposition of Paul Scuderi dated April 10, 2007 | **Exhibit F** |
| Payments from Beverly Bernstein to Paul Scuderi | **Exhibit G** |
| District of Columbia Electrical Permits | **Exhibit H** |
| Excerpts of Deposition of Andrew Kerr dated November 7, 2007 | **Exhibit I** |
| Excerpts of Deposition of Christopher Landis dated April 10, 2007 | **Exhibit J** |

Excerpts of Defendant Paul A. Scuderi, Inc.'s Answers to
Interrogatories                                                    **Exhibit K**

## III.    KEY INDIVIDUALS

**Beverly Bernstein** is the owner of 3248 N Street N.W. in Georgetown, which caught
fire on May 9, 2005.

**Margaret "Maggie" Rubino**, is Mrs. Bernstein's personal assistant who, along with
her husband, oversaw the Bernstein kitchen renovation.

**Sal Rubino/Fiorito** is Ms. Rubino's husband who helped oversee the Bernstein
kitchen renovation.  Ms. Rubino's husband is, in various depositions, referred to as Mr.
Rubino or Mr. Fiorito.  He is one in the same.  He identified himself as Mr. Fiorito at his
deposition.

**Christopher Landis** is the co-owner of Landis Construction Corporation and
negotiated the contract to perform the Bernstein kitchen renovation.  Defendant Landis
Construction Corporation is a design and contracting firm specializing in residential
remodeling, design and building projects.

**Andrew Kerr** was the project manager for Landis Construction on the Bernstein
kitchen renovation.

**Paul Scuderi** was the electrician hired by Ms. Rubino on behalf of Beverly Bernstein
to perform the electrical portion of the renovation.

## IV.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[1]

Mrs. Bernstein's personal assistant Margaret Rubino, and Ms. Rubino's husband,

---

[1]    This Defendant is filing a Statement of Material Facts which are not in dispute in accordance with
L.Cv.R. 56.1.  The following narrative statement adopts this Statement of Material Facts.

Sal Fiorito first contacted Landis Construction Corporation in early 2003 to solicit an estimate for remodeling Mrs. Bernstein's kitchen at 3248 N Street N.W. in Georgetown. Landis submitted a bid on March 20, 2003 that included an allocation for an electrical subcontractor in the amount of $5,075. (Ex. A).  On or about April 28, 2003 Landis submitted a revised bid where the allocation for the electrical work totaled $9,920. (Ex. B) Based upon the almost 100% increase between Landis' first and second estimates for electrical work, Ms. Rubino testified at her deposition that she sought out an electrician on her own as opposed to having Landis subcontract for the work.  Ms. Rubino notified Landis of her decision not to use Landis for electrical component of the project.

> 22 The electrical estimate came
> 1 back at twice what it had been. Then we said well,
> 2 let's see if we can save a significant amount of money
> 3 here, and then again went to Paul Scuderi . . .
>              * * *
> 7 And he had a proposal that again was back closer
> 8 to the original number, and so Chris [Landis] said, "That's
> 9 fine. You want to use your electrician, no problem."

Rubino Dep. p. 26-27 (Ex. C).

On May 12, 2003, Landis and Mrs. Bernstein entered into a contract for renovation of the kitchen for $43,414.60. (Ex. D).  The final contract excluded any electrical work, because this was to be done by Ms. Rubino's independently contracted electrician.  Under the charge for "electrical install of kitchen" the contract reads "by others," indicating that Landis is not charging for the work because someone else was responsible for this part of the job.  (Ex. D).

Ms. Rubino contacted electrician Paul A. Scuderi to do the electrical work on the kitchen.   Landis played no role in selecting or hiring Scuderi.  May 29, 2007 Rubino Dep.

-4-

p. 104 (Ex. C). On April 21, 2003, Scuderi submitted an estimate for the electrical work for $4,855.00. (Ex. E). The Scuderi estimate included a $60 charge to "rewire D/W in existing location." ("D/W" in this context means dishwasher). Scuderi's estimate to perform electrical work for Mrs. Bernstein for $4,855.00 was accepted. April 10, 2007 Scuderi Dep. p. 44-45 (Ex. F).

Scuderi testified at his deposition that he understood the scope of this job to include "making the final electrical connection to the dishwasher." Scuderi Dep. p. 28 (Ex. F).

> 13 Q Okay. With respect to the dishwasher
> 14 located in the kitchen of the Bernstein residence,
> 15 what, if anything, were you contracted to do with
> 16 regards to the dishwasher?
> **17 A I was contracted to make a final**
> **18 connection, electrical connection, on the**
> **19 dishwasher**.
> 20 Q Okay, and just so the record is clear,
> 21 what does that mean to you when you say, to make the
> 22 final connection to the dishwasher?
> **1 A That would be make the final electrical**
> **2 connection to the dishwasher.**
> 3 Q Okay, would that be supplying power to the
> 4 unit so it actually operates?
> **5 A In this case, it meant connecting the**
> **6 power that was already there to the dishwasher**.
> 7 Q Okay. At any time did you actually
> 8 connect the electrical power to the dishwasher?
> 9 A No.[Emphasis Added].

Scuderi Dep. p 27-28 (Ex. F). Mrs. Bernstein paid Mr. Scuderi a total of $4,855. Bernstein Payments (Ex. G). The $4,855 paid to Mr. Scuderi was the entire amount of the estimate, which included $60 to provide an electrical connection to the dishwasher.

> 15    Q    Okay. Now, would that $60 also have
> 16    included to make the final connection between the
> 17    dishwasher and the house wiring? Even though we
> 18    know that you didn't in fact do that, did you bill
> 19    for that, as well?

                    20    A    It was included in my final bill, yes.

Scuderi Dep. p 69 (Ex F).

       Mr. Scuderi obtained five permits to do electrical work at the Bernstein residence.

Scuderi Dep. p 59 (Ex F), Electrical Permits (Ex. H).  One of these permits corresponded

to work that Mr. Scuderi performed on the dishwasher.

                    14    Q    Well, did you believe it was your
                    15    responsibility or Mr. Rubino's responsibility to
                    16    pull electrical permits?
                    17    A    It's ultimately my responsibility to pull
                    18    electrical permits.  Mr. Rubino is not licensed to
                    19    pull electrical permits.
                    20    Q    Okay.  And, in fact, isn't that something
                    21    that you placed on your estimate because you
                    22    anticipated you were going to pull permits?
                    1     A    Correct.
                                              * * *
                    7     Q    Okay, but did you take it upon yourself,
                    8     then, to pull permits?
                    9     A    Yes, absolutely.

Scuderi Dep. p 98-99 (Ex F).

       No one from Landis provided the electrical connection for the dishwasher.

November 7, 2007 Kerr Dep. p. 26 (Ex. I).  No one from Landis knows who connected the

dishwasher.  April 10, 2007 Landis Dep. p 45-46 (Ex. J).  Landis' involvement with installing

the dishwasher and other appliances included "unpacking, uncrating and then moving them

upstairs to the kitchen area, sliding them into place."  Kerr Dep. p.19 (Ex. I).  The contracts

for the kitchen remodeling necessarily precluded Landis from having any involvement with

the electrical component of the renovation.  Landis' Project Manager for the renovation

Andrew Kerr testified at his deposition:

                    13 We weren't really involved with [the wiring].
                    14 Q When you say you weren't really involved with

                                              -6-

15 [the wiring], is that because you -- Landis did not hire Paul
16 Scuderi?
17 A We didn't hire him nor did we have any
18 responsibility for electrical work. So, basically, it
19 was get it to the point where they can do it, pull
20 off, they do their work. Then when they are done, we
21 come back.
22 Q When you say you didn't have any
1 responsibility for the electrical work, is that
2 because it is not part of the contract? It's not
3 something you were paid for --
4 A Correct.
5 Q -- or hired to do?
6 A Yes to both of those.

Kerr Dep. p. 26 -27 (Ex. I).

Mr. Landis testified that any coordination directly between Landis Construction and

Scuderi would have been minimal.

10    Q    Was there ever any kind of coordination
11 between Mr. Scuderi and employees of Landis
12 regarding who was going to do what at the job
13 site?
14    A    Any coordination would have been a
15 courtesy.
16    Q    Do you know if that took place?
17    A    If Andrew [Kerr] called and said, you know, come
18 on down, the appliances are ready to hook up, that
19 would be considered a courtesy.  If I had put money
20 in my contract to manage the electric, that would be
21 a different story.

Landis Dep. p. 36 (Ex. J).

It was Mr. Kerr's understanding that the electricians on the job site would provide

the electrical connection to the dishwasher.  Kerr Dep. p. 31-32 (Ex. I)  Landis had neither

the authority nor the responsibility to become involved with the electrical aspect of the

project.  Landis takes affirmative steps to ensure its employees do not undertake tasks

they are not qualified to do.

-7-

> 7 At any time does Landis tell its employees,
> 8 if necessary, it is okay for you to hook up a
> 9 particular appliance?
> 10 A No.
> 11 Q At any time does Landis tell its employees,
> 12 don't touch the electricity going to appliances
> 13 because they are being hooked up by another
> 14 subcontractor?
> 15 A I would tell people that are not qualified to
> 16 do things, not to touch them, yes.

Kerr Dep. p. 63 (Ex. I).

Mr. Fiorito, not Landis, was Scuderi's main contact for the kitchen renovation and any contact with Landis was limited. In its answers to Interrogatories, Scuderi stated "This defendant did not have a written contract with Landis Construction and dealt primarily with Sal Rubino, whom this Defendant understood to be the project manager. Scuderi Answers to Interrogatories (Ex. K). Mr. Scuderi testified that he believed the project was "being run" by Mr. Fiorito. Scuderi Dep. p. 96-97. Mr. Scuderi further testified that Mr. Fiorito was the individual coordinating his jobs.

> 15    Q    Okay. Were you coordinating directly with
> 16  Mr. Rubino, or were you working with any other kind
> 17  of contractor on the site?
> 18    A    Initially, it was I was coordinating with
> 19  Mr. Rubino.
> 20    Q    Did that change?
> 21    A    Mr. Rubino introduced me, in a subsequent
> 22  visit, introduced me to Landis Construction.
>
> 1    Q    Okay. And who from Landis did you meet?
> 2    A    I -- I believe it was Chris. I believe it
> 3  was Chris.
>                        * * *
> 11    Q    So at some point you meet with a
> 12  representative of Landis Construction. Did they
> 13  provide you with a list of items that they needed to
> 14  have done for this kitchen renovation?

```
15      A   They did not.
16      Q   Okay, what was the purpose of the meeting
17   with the representative from Landis?
18      A   Sal wanted to get all the players
19   together.  When I mean, players I mean individuals
20   that would be working on the job, in order to
21   coordinate, for coordination purposes.
```

Scuderi Dep. p. 25-26 (Ex. I).

Upon completion of the electrical work, Mr. Scuderi notified Mr. Fiorito so that he

could arrange for payment from Mrs. Bernstein.  Scuderi Dep. p. 83-84 (Ex. I).  Mr. Scuderi

did not notify Landis upon completion of his work.

**V.**    **ARGUMENT**

**I.**    **SUMMARY JUDGMENT MUST BE GRANTED LANDIS CONSTRUCTION WITH REGARD TO NEGLIGENCE, BECAUSE (A) THERE IS NO EVIDENCE THAT LANDIS PROVIDED THE ELECTRICAL CONNECTION TO THE DISHWASHER AND (B) LANDIS OWED NO DUTY TO PROVIDE, OVERSEE OR INSPECT THE ELECTRICAL CONNECTION TO THE DISHWASHER**

The underlying allegations in Plaintiffs' First Amended Complaint, as they apply to

Defendant Landis, aver that the subject fire was caused by a faulty electrical connection

to a dishwasher that was installed in a 2003 renovation for which Landis was a contractor.

Plaintiffs' First Amended Complaint, Count One, alleges Landis was negligent in:

> (a)    failing to properly and adequately train its employees in the proper procedures to be followed while installing a residential dishwasher;

> (b)    failing to properly install the dishwasher at the Subject Premises;

> (c)    failing to use required electrical connections and components during the course during the course of the installation of the dishwasher at the subject premises;

(d)     failing to inspect the electrical connection connections for the dishwasher that was installed at the Subject Premises;

(e)     failing to perform its duties in installing the dishwasher at the Subject Premises in a workmanlike manner;

(f)     failing to conduct its activities in accordance with local, state, and/or national regulations and standards including but not limited to the National Electric Code;

(g)     failing to follow the instruction manual for installation of the Bosch dishwasher at the Subject Premises;

(h)     breaching its agreement with plaintiffs' insured to provide its services in a safe and businesslike manner; and

(i)     otherwise failing to use due care under the circumstances as may be disclosed during the course of discovery.

Plaintiffs have failed to produce any evidence through the course of discovery to indicate that Landis in fact provided the electrical connection to the dishwasher, or that Landis was responsible for the failure of electrician Scuderi to properly provide that connection.

**A.     It is Clear that No one From Landis Provided the Electrical Connection to the Dishwasher, and There is Nothing in the Record Evidence to Suggest They Did.**

Plaintiffs have failed to produce any evidence as to who provided the alleged faulty connection to the subject dishwasher. Christopher Landis, the owner of Landis Construction testified that he had no knowledge of who provided the electrical connection. Landis Dep. p. 45-46 (Ex. J).  Andrew Kerr, the project Manager for Landis on the Bernstein renovation, did not make the connection and does not know who did. Kerr Dep. p. 30 (Ex. I).  Andrew Kerr further testified that Landis takes affirmative steps to ensure that its employees do not undertake tasks outside the employees' scope. Kerr Dep. p. 30 (Ex.

-10-

I).

Any allegation that Landis provided this connection would be nothing more than mere speculation. This is insufficient to overcome a Motion for Summary Judgment."The plaintiff's burden to produce credible evidence must be met at the summary judgment stage, and speculation about potential evidence at trial would not carry that burden. *See Celotex, supra.*" Hood v. Prudential Ins. Co. of America, 758 F. Supp 764, (D.D.C.,1991). *See also* Merit Motors, Inc. v. Chrysler Corp. 569 F.2d 666, 672, 187 U.S.App.D.C. 11, 17 (C.A.D.C. 1977) ("After considering Chrysler's motion for summary judgment and appellants' response, the District Court dismissed Staelin's theory "since his opinion is based solely on speculations and hypotheses and is unsubstantiated by any evidence in the record * * *." 417 F.Supp. at 272.").

**B.    Landis Owed No Duty to Provide, Oversee or Inspect the Electrical Connection to the Dishwasher.**

It is axiomatic that any cause of action for negligence must establish that the alleged tortfeasor owed a duty to the aggrieved party. *See generally,* Tripp v. U.S., 257 F.Supp.2d 37, 44 (D.D.C.,2003) ("It is axiomatic that, in order to state a claim for negligence, plaintiff must allege a duty of care, breach of that duty, and injury proximately caused by that breach. *See, e.g., Bullock v. National City Mortgage Co.,* 735 A.2d 949, 952 (D.C.1999)").

The undisputed facts of this case establish that Landis owed no duty to Mrs. Bernstein regarding the electrical connection to the dishwasher.

**1.    The "Construction Contract" does not create a duty because the "Electrical Install of Kitchen" portion of the contract was rejected by Ms. Rubino and both parties agreed it would be done "by others."**

Landis' original estimates offered to provide and manage electrical services for the renovation at a certain price. March 20 and April 28, 2003 estimates (Ex. A and B), Landis Dep. p. 36 (Ex. J).  Ms. Rubino rejected those specific services being offered in favor of a cheaper electrician.  The estimate was modified and the contract reflects the fact that Landis would be not be handling these services.  Nowhere in the contract does it establish a duty for Landis to provide electrical services, to manage the electrical services or to inspect the services.  Furthermore, Scuderi has admitted that he contracted to provide the electrical connection to the dishwasher.  Scuderi Dep. p 27-28 (Ex. I).

**2.      Paul Scuderi concedes he bore the duty to provide the electrical connection to the dishwasher.**

In no uncertain terms, Scuderi testified that he "was contracted to make a final connection, electrical connection, on the dishwasher . . .In this case, it meant connecting the power that was already there to the dishwasher." Scuderi Dep. p 27- 28 (Ex. F).  Mr. Scuderi further admits he billed and was paid for making this connection.  Scuderi Dep. p 69 (Ex. F).

**3.      Landis had no duty to ensure Ms. Rubino's electrician performed the work he was paid to do, or to ensure that he did this work properly.**

There can be no agency relationship or imputed liability between Scuderi and Landis because Landis had no control or other involvement with Scuderi.  Landis played no part in selecting or hiring Paul Scuderi.  Rubino Dep. p.104 (Ex. C).  Landis' project manager for the Bernstein renovation, Andrew Kerr, testified that Landis was not involved in the wiring of the dishwasher.  Kerr Dep. p. 26-27 (Ex. I).  Landis had no involvement with the electricians on this job.

-12-

17 A  We didn't hire [Scuderi] nor did we have any
18 responsibility for electrical work. So, basically, it
19 was get it to the point where they can do it, pull
20 off, they do their work. Then when they are done, we
21 come back.

Kerr Dep. p. 26 (Ex. I). There can be no agency relationship or imputed liability between

Scuderi and Landis because had no control or other involvement with Scuderi.

> **4.** **Landis was not the general contractor over Scuderi, Landis did not coordinate the electrical portion of the renovation, nor did anyone at Landis appear to be the main contact at the job for Scuderi**.

Mr. Scuderi believed the project was "being run" by Mr. Fiorito.  Scuderi Dep. p.,96-

97 (Ex. F).  Mr. Fiorito, not Landis, was Scuderi's main contact for the kitchen renovation

and any contact with Landis was limited.  Mr. Fiorito organized a meeting with "all the

players" to in order to "coordinate, for coordination purposes."  Scuderi Dep. p. 26-97 (Ex.

F).  Mr. Scuderi did not receive any work assignments from Landis.  Scuderi Dep. p. 26

(Ex. F).  Mr. Scuderi contacted Mr. Fiorito, not Landis, when his work was complete.

Scuderi Dep. p. 83-84 (Ex. F).

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF LANDIS CONSTRUCTION WITH REGARD TO BREACH OF WARRANTY AND BREACH OF CONTRACT BECAUSE THERE WAS NO CONTRACT OR WARRANTY FOR ELECTRICAL SERVICES

### A.    Landis Made no Implied or Express Warranties Regarding Ms. Rubino's Independently Hired Electrician

Plaintiffs' First Amended Complaint, Count Four, alleges in relevant part:

By and through its conduct, defendant, Landis assumed certain obligations and extended certain warranties including, but not limited to, an implied warranty that its provision of construction services would be performed in a professional safe manner and that its services would be provided in a manner consistent with the standards of the construction industry. ¶32.

-13-

As has been previously established, the electrical work was outside "its provision of construction services." Landis extended no warranties for work performed by an electrician that Ms. Rubino sought out and hired. Moreover, there is no evidence in the record regarding "construction industry standards." Even if there were, it is unlikely that those standards would require Landis to guarantee work by someone outside of its control.

**B.    Landis Did Not Enter Into Any Contract with Regard to Ms. Rubino's Independently Hired Electrician.**

Plaintiffs' First Amended Complaint, Count Seven, alleges in relevant part:

> Pursuant to its agreement with plaintiffs; insured, defendant, Landis, was obligated by contract to perform its work in a professional and safe manner, consistent with standards of the construction industry. ¶41.

As has already been established, Landis did not contract to perform the electrical services for this renovation. Ms. Rubino independently selected and hired her own electrician. There can be no breach of contract if there is no contract.

**VI.    CONCLUSION**

Landis and Scuderi were merely two companies working on the same kitchen renovation. There is no theory under contract or tort law that would make Landis responsible for anything Scuderi or anyone else did or failed to do. Therefore, Summary Judgment in favor of Landis Construction Corporation should be entered because there is no evidence to establish Landis' liability with regard to the electrical connection of the dishwasher.

**BUDOW AND NOBLE, P.C.**

/s/

_____

Allan A. Noble, 166926
Suite 500 West, Air Rights Center
7315 Wisconsin Avenue
Bethesda, Maryland 20814
(301) 654-0896
*Counsel for Landis Construction Corporation*

## CERTIFICATE OF SERVICE

I do hereby certify that a true copy of the foregoing Defendant Landis Construction Corporation's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment was electronically filed and served this 2nd day of May, 2008, to the following:

Eric N. Stravitz, Esquire
Mesirow & Stravitz, PLLC
1307 New Hampshire Avenue
Suite 400
Washington, D.C. 20036
*Counsel for Plaintiffs Federal Insurance Company* and *Hartford Casualty Insurance Company*

Mark E. Utke, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiff Federal Insurance Company*

John A. Rego, Esquire
ANDERSON & QUINN, LLC
25 Wood Lane
Rockville, MD 20850
*Counsel for Defendant Paul Scuderi*

Brian E. Tetro, Esquire
White and Williams
1800 One Liberty Place
Philadelphia, PA 19103
*Counsel for Plaintiff Hartford Casualty Insurance Company*

Edward J. Brown, Esquire
McCarthy Wilson, LLP
100 S. Washington Street
Rockville, Maryland 20850
*Counsel for Defendant Wuerstlin Appliance Service*

_/s/_____
Allan A. Noble

-15-

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| FEDERAL INSURANCE COMPANY | |
| and | |
| HARTFORD CASUALTY INSURANCE COMPANY | |
| Plaintiffs, | Case No. <u>1:06CV00379</u><br>Magistrate Judge Alan Kay |
| v. | |
| LANDIS CONSTRUCTION CORPORATION | |
| and | |
| WUERSTLIN APPLIANCE SERVICE | |
| and | |
| MR. PAUL SCUDERI | |
| Defendants. | |

**DEFENDANT LANDIS CONSTRUCTION CORPORATION'S STATEMENT**
**OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

1.  Mrs. Bernstein's personal assistant Margaret Rubino, and Ms. Rubino's husband, Sal Fiorito first contacted Landis Construction Corporation in early 2003 to solicit an estimate for remodeling Mrs. Bernstein's kitchen at 3248 N Street N.W. in Georgetown.  Landis Dep. p. 8-9 (Ex. J).

2.  Landis submitted a bid on March 20, 2003 that included an allocation for an electrical subcontractor in the amount of $5,075. (Ex. A).

3.  On or about April 28, 2003 Landis submitted a revised bid where the allocation for the electrical work totaled $9,920. (Ex. B).

4.   Based upon the almost 100% increase between Landis' first and second estimates for electrical work, Ms. Rubino sought out an electrician on her own as opposed to having Landis subcontract for the work.  Ms. Rubino notified Landis of her decision not to use Landis for electrical component of the project.  Rubino Dep. p. 26-27 (Ex. C).

5.   On May 12, 2003, Landis and Mrs. Bernstein entered into a contract for renovation of the kitchen for $43,414.60. (Ex. D).

6.   The final contract excluded any electrical work, because this was to be done by Ms. Rubino's independently contracted electrician.  Under the charge for "electrical install of kitchen" the contract reads "by others," indicating that Landis is not charging for the work because someone else was responsible for this part of the job.  (Ex. D).

7.   Ms. Rubino contacted electrician Paul A. Scuderi to do the electrical work on the kitchen.  Landis played no role in selecting or hiring Scuderi.  May 29, 2007 Rubino Dep. p. 104 (Ex. C).

8.   On April 21, 2003, Scuderi submitted an estimate for the electrical work for $4,855.00. (Ex. E).

9.   The Scuderi estimate included a $60 charge to "rewire D/W in existing location." ("D/W" in this context means dishwasher).  Scuderi's estimate to perform electrical work for Mrs. Bernstein for $4,855.00 was accepted. April 10, 2007 Scuderi Dep. p. 44-45 (Ex. F).

-2-

10.    Mr. Scuderi understood the scope of this job to include "making the final electrical connection to the dishwasher." Scuderi Dep. p. 27-28 (Ex. F).

11.    Mrs. Bernstein paid Mr. Scuderi a total of $4,855. Bernstein Payments (Ex. G).

12.    The $4,855 paid to Mr. Scuderi was the entire amount of the estimate, which included $60 to provide an electrical connection to the dishwasher. Scuderi Dep. p 69 (Ex F).

13.    Mr. Scuderi obtained five permits to do electrical work at the Bernstein residence. Scuderi Dep. p 59, 98-99 (Ex F), Electrical Permits (Ex. H).

14.    No one from Landis provided the electrical connection for the dishwasher. November 7, 2007 Kerr Dep. p. 26 (Ex. I).

15.    No one from Landis knows who connected the dishwasher. April 10, 2007 Landis Dep. p 45-46 (Ex. J).

16.    Landis' involvement with installing the dishwasher and other appliances included "unpacking, uncrating and then moving them upstairs to the kitchen area, sliding them into place." Kerr Dep. p.19 (Ex. I).

17.    The contracts for the kitchen remodeling necessarily precluded Landis from having any involvement with the electrical component of the renovation. Kerr Dep. p. 26 -27 (Ex. I).

18.    Any coordination between Landis Construction and Scuderi would have been minimal. Landis Dep. p. 36 (Ex. J).

19.    It was Mr. Kerr's understanding that the electricians on the job site would provide the electrical connection to the dishwasher and that Landis was not responsible for coordinating with the electrician. Kerr Dep. p. 31-32 (Ex. I)

20.    Landis takes affirmative steps to ensure its employees do not undertake tasks they are not qualified to do.  Kerr Dep. p. 63 (Ex. I).

21.    Mr. Scuderi did not have a written contract with Landis Construction and dealt primarily with Sal Rubino, who was the project manager.  Scuderi Answers to Interrogatories (Ex. K).

22.    The project was being run by Mr. Fiorito and Mr. Fiorito was the individual coordinating the job.  Scuderi Dep. p. 25-26, 96-97. (Ex. I).

23.    Upon completion of the electrical work, Mr. Scuderi notified Mr. Fiorito so that he could arrange for payment from Mrs. Bernstein.  Scuderi Dep. p. 83-84 (Ex. I).

24.    Mr. Scuderi did not notify Landis upon completion of his work.  *Id*.


**BUDOW AND NOBLE, P.C.**


_____/s/_____
Allan A. Noble, 166926
Suite 500 West, Air Rights Center
7315 Wisconsin Avenue
Bethesda, Maryland 20814
(301) 654-0896

## CERTIFICATE OF SERVICE

I do hereby certify that a true copy of the foregoing Defendant Landis Construction Corporation's Statement of Material Facts was electronically filed and served this 2nd day of May, 2008 to the following:

Eric N. Stravitz, Esquire
Mesirow & Stravitz, PLLC
1307 New Hampshire Avenue, NW
Suite 400
Washington, D.C. 20036
*Counsel for Plaintiffs Federal Insurance Company and Hartford Casualty Insurance Company*

Brian E. Tetro, Esquire
White and Williams
1800 One Liberty Place
Philadelphia, PA 19103
*Counsel for Plaintiff Hartford Casualty Insurance Company*

Mark E. Utke, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiff Federal Insurance Company*

Edward J. Brown, Esquire
McCarthy Wilson, LLP
100 S. Washington Street
Rockville, Maryland 20850
*Counsel for Defendant Wuerstlin Appliance Service*

John Rego, Esquire
25 Wood Lane
Rockville, MD 20850
*Counsel for Defendant Paul Scuderi*

_/s/_____
Allan A. Noble

-5-