IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| FEDERAL INSURANCE COMPANY | : |
| and | : |
| HARTFORD CASUALTY INSURANCE COMPANY | : |
| Plaintiffs | : |
| v. | : Case No. 1:06CV00379<br>Magistrate Judge Alan Kay |
| LANDIS CONSTRUCTION CORPORATION | : |
| and | : |
| WUERSTLIN APPLIANCE SERVICE | : |
| and | : |
| PAUL A. SCUDERI, INC. | : |
| Defendants | : |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS PAUL A. SCUDERI, INC. AND WUERSTLIN APPLIANCE SERVICE

Defendants, Paul A. Scuderi, Inc., and Wuerstlin Appliance Service through counsel and pursuant to Federal Rule of Civil Procedure 56, move this Court for an Order granting summary judgment in their favor and against the Plaintiffs in the above-captioned matter. The grounds and support for this Motion are more fully set forth in the accompanying Memorandum of Points and Authorities and Statement of Material Facts to which there is no Genuine Dispute.

Respectfully submitted,

ANDERSON & QUINN, LLC

/s/ John A. Rego
John A. Rego #422378
25 Wood Lane
Rockville, Maryland 20850
(301) 762-3303
*Counsel for Paul A. Scuderi*

/s/ Edward J. Brown
Edward J. Brown
The Law Office of Edward J. Brown, LLC
3290 N. Ridge Road, Suite 210
Ellicott City, MD 21043
Counsel for Wuerstlin Appliance Services

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of May, 2008 a copy of the foregoing was served via electronic filing and first-class mail, postage prepaid upon:

Eric N. Stravitz, Esquire
2000 Massachusetts Avenue
Suite 200
Washington, DC 20036
*Counsel for Plaintiffs*

Edward J. Brown, Esquire
The Law Office of Edward J. Brown, LLC
3290 N. Ridge Road
Suite 210
Ellicott City, MD 21043-3363
*Counsel for Wuerstlin Appliance Service*

Allan A. Noble, Esquire
Michael J. Budow, Esquire
Budow & Noble, PC
Suite 500 West, Air Rights Building
7315 Wisconsin Avenue
Suite 600
Bethesda, MD 20814
*Counsel for Landis Construction Company*

Mark E. Utke, Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiff Federal Insurance Company*

Brian E. Tetro, Esquire
White & Williams, LLP
1800 One Liberty Place
Philadelphia, PC 19103
*Counsel for Plaintiff Hartford Insurance Company*

/s/
John A. Rego

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| FEDERAL INSURANCE COMPANY : | |
| and : | |
| HARTFORD CASUALTY INSURANCE : COMPANY : | |
| Plaintiffs : | |
| v. : | Case No. 1:06CV00379 |
| : | Magistrate Judge Alan Kay |
| LANDIS CONSTRUCTION : CORPORATION : | |
| and : | |
| WUERSTLIN APPLIANCE SERVICE : | |
| and : | |
| PAUL A. SCUDERI, INC. : | |
| Defendants : | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

This lawsuit arises from a fire that occurred in the home of Beverly Bernstein on May 9, 2005. The home is located at 3248 N Street, N.W., Washington, D.C., 20007. At the time of the fire, Ms. Bernstein's home and contents were insured by the Plaintiffs, Federal Insurance Company ("Federal") and Hartford Insurance Company ("Hartford"). Federal insured the contents of the home, and Hartford the premises itself.

As a result of the fire, Federal and Hartford assert subrogation claims against Landis Construction Corporation ("Landis"), Weurstlin Appliance Service ("Weurstlin") and Paul A. Scuderi, Inc. ("Scuderi"). It is alleged in the First Amended Complaint that Landis was a general contractor providing renovation services to the Bernstein residence, and specifically the kitchen, beginning in May 2003. Scuderi, an electrical contractor, is alleged to have provided certain electrical work during the renovation. Weurstlin, an appliance warranty service and repair

1

company, is alleged to have performed warranty work to a Bosch dishwasher installed in the kitchen in August 2004. For the purposes of this Motion, it is not disputed that the May 9, 2005 fire occurred in or around the dishwasher, however, the exact cause of the fire and its relationship and origin to the components of the dishwasher are disputed.

As to Defendant Scuderi specifically, the First Amended Complaint contains 3 Counts, Negligence, Breach of Warranty and Breach of Contract. The main thrust of Plaintiffs' lawsuit against Scuderi is that it improperly connected the dishwasher at sometime during the late spring or summer of 2003, that this improper connection caused the fire in May 2005 and that Plaintiffs' damages flow from the fire. Scuderi denies ever connecting the dishwasher at issue.

Substantial discovery has been undertaken in this case, including the depositions of all 5 parties, several fact witnesses, Ms. Bernstein and several experts. Moreover, the parties have exchanged extensive written discovery and document responses. After the completion of this discovery, there remains no evidence, legally sufficient, to allow a fact finder to conclude that Scuderi connected the subject dishwasher as alleged, without engaging in speculation or conjecture. Moreover, Plaintiffs' electrical engineer, Robert Neary, is unable to, more likely than not, opine as to the cause of the fire. Consequently, summary judgment is appropriate in favor of Scuderi and Wuerstlin.

II.  PAUL A. SCUDERI, INC.'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE[1]

Paul A. Scuderi, Inc. Is a Maryland corporation in the business of electrical contracting and renovation. (Exhibit 1, Scuderi deposition at 8, 16-17.) The company currently has 2 employees, Paul Scuderi and his wife.(Id.) Mr. Scuderi holds, and at all times relevant held, master electrician licenses in the District of Columbia, Virginia and Maryland and has done so for more than 20 years. (Id at 13-14). In the 2003-2004 time frame, Paul A. Scuderi, Inc. employed 2 additional electricians, William Seagle and Derick Guertler. (Id. at 50). Mr. Seagle

---

[1] Defendants in this Motion set forth the facts in a light most favorable to Plaintiffs, without prejudice to or waiver of Plaintiffs' obligations to prove each fact necessary to their respective cases should this matter go to trial.

2

held a master electrician's license and Mr. Guertler a journeyman's. (Id. at 51).

Sometime in the spring of 2003, Scuderi was contacted by a Sal Rubino (Fiorito)[2] or Margaret Rubino regarding performing certain electrical work during the Bernstein kitchen renovation. (Id., at 21-22 See also, Exhibit 10 at 104). An unsigned estimate for this work was sent by Scuderi on April 21, 2003 and this became the initial scope of work to be performed by Scuderi on the project. (Id., at 24: See also, Estimate No. 348 attached as Exhibit 2). There is no other written document regarding electrical work to be performed by Scuderi which describes with any specificity work done at the Bernstein residence. There is also no evidence in the record that Mr. Scuderi ever spoke with directly, or for that matter communicated with in any form regarding the electrical work to be performed at her residence, Ms. Bernstein. (Exhibit 3, Bernstein deposition at 30-31).

Sometime in early April, Paul Scuderi went to Bernstein's residence to perform a walk through with perhaps Sal Fiorito and a representative of Landis, the general contractor. (Exhibit 1, at 23-25). After receiving a deposit check sometime thereafter, Scuderi began performing electrical work at the Bernstein residence pursuant to Estimate 348. The vast majority of the work performed related to electrical lighting and switches, and the hookup of non-dishwasher related appliances. (Exhibit 2, Estimate No. 348). In fact, the Estimate itself did not contain the entire scope of work, and Scuderi performed additional work at the Bernstein residence for which he did not specifically charge nor for which he was specifically paid. (Exhibit 1, at 109-110; See also, Exhibit 4, Paul A. Scuderi, Inc.'s Answers to Plaintiff's Interrogatories, Nos. 10 and 25).

From early June 2003 to early September 2003, Scuderi performed various electrical work at the premises, including installation of light fixtures, light fixture housings, relocation of new circuits, relocation of outlets and wiring in cabinets and for under-counter lights, installation and the tying in of new circuits and breakers, installation of light dimmers, installation of outlet

---

[2] There was initial confusion regarding the correct name of Mr. Sal Fiorito, a representative of Ms. Bernstein. He, at times during the course of this litigation, was known as Sal Rubino, Sal Fiorito and Sal Fiorito-Rubino. The confusion arose as a result of his wife, Margaret Rubino, being involved in the renovation of the Bernstein residence also. Mr. Fiorito's deposition was taken in this case on May 29, 2007 and it was determined that Sal Fiorito is his correct name.

3

boxes and outlets in cabinets, plug strips beneath cabinets, under-counter lights, recessed lights and dimmers and electrical work regarding an oven and convector. (Exhibit 4, No. 25). Scuderi also installed two hanging light fixtures. (Id.)

In early to mid-June 2003, Scuderi also placed the existing dishwasher circuit in a switch box on the wall below the future location for the sink. (Id, No 10.) From this switch box, Scuderi installed and left a coil, of "BX" metal clad wire for connection to the future dishwasher. (Id.) Scuderi left a sufficient length of "BX" wire to connect to the dishwasher and awaited instruction from Mr. Fiorito for its delivery to the premises for installation. (Id., See also Exhibit 1, at 29)

In late August or early September Mr. Scuderi went to the Bernstein residence regarding the installation of an oven. When Scuderi arrived at the job, he noticed that the dishwasher was already installed and operational. (Id; See also, Exhibit 1 at 90-91) Scuderi did not connect the electrical power to the dishwasher. (Id., See also, Exhibit 1 at 28.) Scuderi does not know who connected the power to the dishwasher. (Id.). Moreover, and most interesting, it is undisputed that the electrical connection to the dishwasher, at the time of the fire, was made with a type of wire known as ROMEX, a much different and distinct wire then the "BX" metal clad wire used by Mr. Scuderi during the course of the Bernstein renovation. In fact, the only wire purchased by Scuderi for the Bernstein renovation was "BX" wire. (See, Exhibits 5 a-c, invoices of materials purchased for the Bernstein renovation).

Scuderi was paid for his work by 3 separate checks signed by Beverly Bernstein, check nos. 1582, 1606 and 1658, the final check not being cleared until September 4, 2003. (See, Exhibits 6a-c). The checks were issued for blocks of work performed, not specific items of work. (Exhibit 1 at 109). Again, Scuderi performed additional electrical work at the Bernstein residence not reflected on the estimate nor for which he specifically charged. Id. The amount reflected in Estimate 348 to re-wire the dishwasher was a $60.00 charge out of the total of $4,855.00 paid to Scuderi. (Id. at 110; See also Exhibit 2). This $60.00 charge included not only re-wiring (connecting) the dishwasher to the electrical supply (which Scuderi admittedly did not

4

do) but also included the relocation of the existing dishwasher circuit, the installation of the switch box under the sink and the installation of the "BX" cable of sufficient length in the switch box to ultimately be connected to the dishwasher. (Exhibit 1 at 110)

Christopher Landis, a partner and owner in Landis Construction Corporation; was called to testify in a deposition taken on April 10, 2007. (Exhibit 7 at 7) He provided basic the fact that Andrew Kerr was the project manager assigned by Landis to the Bernstein renovation. (Id. at 9). He also knew Sal Fiorito personally and knew that Fiorito was "very handy" and had renovated his own house at one time. (Id. at 15, 47). The Landis contract for the Bernstein renovation was negotiated with Mr. Fiorito. (Id. at 16). According to Landis, Fiorito functioned as the "client rep" for Ms. Bernstein. (Id. at 14). Of most importance is that no one from Landis has any first hand personal knowledge of who actually connected the electricity to the dishwasher, nor whether it was done by anyone from Scuderi. (Id. at 45). Mr. Landis then referred additional questions on this topic to the on site manager for Landis, Andrew Kerr. (Id. at 46).

Kerr, Landis' construction manager, was deposed on November 7, 2007. (Exhibit 8) When questioned regarding the electrical connection to the dishwasher, Kerr testified that he had "absolutely no personal knowledge" regarding the electrical connection to the dishwasher. (Exhibit 8, at 70). Moreover, he has no recall of observing any electrical work by Scuderi or any of its employees at the Bernstein residence. (Id. at 70-71).

Beverly Bernstein, the owner of the premises, was deposed on May 29, 2007. (Exhibit 3, 9-11). She is an elderly woman who relied on Margaret Rubino and, to an extent, Sal Fiorito to oversee the renovation project. (See, e.g. Exhibit 3, at 12, 30) Aside from Rubino and Fiorito, Ms. Bernstein had a staff of people who helped her manage the residence and it attendant apartments.

These included Christopher Wallis, her property manager (Id. at 14); Winifred Miller, her housekeeper (Id. at 55), and Fitzalbert Barclay, a master electrician who worked for Ms. Bernstein though Christopher Wallis (Exhibit 9, Barclay Deposition at 9-11).

5

Of import, Ms. Bernstein testified that after the renovation in 2003, she and those in her household experienced problems with the dishwasher, to the extent that service people were "constantly being called" to work on it. (Exhibit 3 at 28-29). Moreover, she has no idea who "hardwired the dishwasher" in her home, and even further, had no dealings with Scuderi, nor recalled ever meeting him. (Exhibit 3 at 29-30).

Margaret Rubino, Ms. Bernstein's representative for the kitchen renovation, (Exhibit 10, Rubino deposition) was also deposed on May 29, 2007. She believes that she contacted Scuderi regarding the project. (Id at 104). She was asked about her knowledge regarding who may have made the connection to the dishwasher. (Id. at 29). She testified that she has no knowledge of who provided the electrical connection to the dishwasher, has never been told by anyone who did it and was not interested in this issue because in her mind, at least, the dishwasher caught fire because of problems with its manufacture. (Id. at 29-30), Interestingly, it was her husband, Sal Fiorito, who chose the Bosch dishwasher that was installed in the Bernstein residence. (Exhibit 11, Fiorito Deposition at 27)

Likewise, Sal Fiorito, deposed on the same day, denied any knowledge of who connected the dishwasher to the electrical power. When asked if he had any idea who hardwired the subject dishwasher, Fiorito responded with an emphatic "absolutely not, absolutely not." (Id. at 25-28) He then went on to state that he understood (rather thoroughly) what the term "hardwiring meant (Id.; at 28) and that he himself had nothing to do with the connection to the dishwasher.

Ms. Bernstein's housekeeper, Winifred Miller, was deposed on November 7, 2007 (Exhibit 12, Miller deposition). She worked for Ms. Bernstein at the time of the fire, and ran the dishwasher before leaving the residence on the night of the fire. (Id. at 18-20). She likewise had no knowledge of who may have connected the dishwasher to the electrical supply during the renovation or before the fire. (Id. at18-20). She also had no knowledge of Scuderi or Paul Scuderi. (Id. at 31)

Fitzalbert Barclay, who performed electrical work for Ms. Bernstein through her property manager, Christopher Wallis, was also deposed on November 7, 2007. (Exhibit 9 at Barclay

6

deposition). This master electrician has done electrical work at the Bernstein residence since 1995. (Id. at 9-13). He has no knowledge of the dishwasher until after the fire. (Id. at 25), and no knowledge who may have connected it to the electrical source. (Id. At 35)

Finally on that day, Christopher Wallis, Ms. Bernstein's property manager, was deposed. (Exhibit 13, Wallis deposition). He has managed the Bernstein property through a contract that she has with the Fred A. Smith Company. (Id. at 7,11). He has no knowledge of who made the electrical connection to the dishwasher, or for that matter, any of the other appliances, nor does he posses any information regarding this. (Id. at 29, 46-47). He possesses no knowledge of Scuderi or Paul Scuderi (Id. at 27-28).

Two representatives of Wuerstlin Appliances Services have also been called to testify by way of deposition, Tommy Smith, (Exhibit 14, Smith Deposition) Wuerstlin's repair technician and its owner, Martin Wuerstlin (Exhibit 15, Wuerstlin Deposition). Smith was deposed on September 27, 2007. He testified that on August 11, 2004, he performed warranty service on the Bosch dishwasher in the Bernstein residence to repair a circulator motor. (Exhibit 14, at 134 See also, Exhibit 16, Wuerstlin Work Ticket). Smith testified also in his deposition that he had no knowledge of Scuderi or what it did. (Id. at 134-135). As for Martin Wuerstlin; he had no knowledge of how the dishwasher had been wired to the electrical power and had no independent knowledge of Scuderi or its role in this lawsuit. (Exhibit 15, at 44, 62),

Plaintiff's also designated Michael Schaal, a certified fire investigator, as an expert witness and he was deposed on January 30, 2008. (Exhibit 17, Schaal deposition). Schaal testified that the fire in the Bernstein residence originated in the right front quadrant, or quarter, of the Bosch dishwasher, somewhere below the stainless steel deck of the dishwasher and the wood floor underneath it as part of the kitchen. (Exhibit 17, at 35-37, 58)[3] Of greatest import is

---

[3] Defendants Scuderi and Wuerstlin have designated electrical engineers as expert witnesses to testify regarding the cause of the fire at issue. Scuderi's engineering expert is Dale Benedick and Wuerstlin's is Terrance Duvall. Both have provided reports to the Plaintiffs and been deposed by them. Both have testified that the cause of the fire at issue was due to a manufacturing defect in the Bosch dishwasher, in Benedick's case, a defective capacitor, in Duvall's, a defective starter. For the purposes of this Motion, neither disputes the **general** origin location of the fire as identified by Schaal, but both dispute its specific location in or around the dishwasher and whether it was caused by a mechanism which can be attributed to either of these Defendants.

7

that Schaal, Plaintiffs' fire investigator, has no information or knowledge to indicate who may have connected the dishwasher to the electrical supply during its initial renovation. (Id. at 131)

Plaintiffs also designated to testify as an expert Robert Neary, an electrical engineer, regarding the cause of the fire. (Exhibit 18, Neary Deposition). He was deposed on January 30, 2008. Neary's essential opinion is that arcing among uninsulated and improperly connected ROMEX wires to the dishwasher caused heating in the electric wiring, causing a short or failure which in turn caused ignition of combustible material in the dishwasher. (Id. at 211-212, 218-220). This arcing was evidenced by beads (bumps on the wire caused by heat from the fire) on the wire. (Id. at 220-221). The problem that Neary has with his opinion, and what actually makes the opinion of no value, is that he cannot testify whether the evidence of the arcing that he claims to have observed on the connecting wires was a cause or, instead a victim, of the fire. (Id. at 236-237). In others words, based upon the information presented to him, he could not testify more probably than not, that the evidence of arcing depicted by beading on the wire happened before the fire or, after the fire as a result of heat from the fire. (Id.) Even further, Neary was not asked to attribute the conduct of any particular Defendant or, non-Defendant, to the cause of the fire and is not capable of doing so based upon the information available to him in this case. (Id at 210).

The common theme throughout all of the testimony in this case is that there is no witness who provides any fact that can point to by whom the Bosch dishwasher was connected or even when it was connected.

III.   **WUERSTLIN APPLIANCE SERVICE'S ADDITIONAL STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** (See, footnote 1)

Wuerstlin Appliances Service adopts by reference, for purposes of this Motion, Defendant Scuderi's statement of fact and further contends that for purposes of this Motion the following material facts are not in dispute: Wuerstlin Appliance Service performed warranty work on the dishwasher at issue approximately nine months before the fire on August 11, 2004. See, (Exhibit 16, See also, Exhibit 14 at 134). Wuerstlin's warranty work was limited to

8

replacement of at circulating pump motor (i.e. the motor which powers the flow of the water used to spray clean the dishes in the dishwasher) (Id. at 110). It should be noted that Smith did not have any recollection of the actual visit, and thus his testimony largely consisted of what would have been done under certain scenarios. (Exhibit 14 at 119).

The work performed by the Wuerstlin technician Smith did not require disconnection of the electrical connection points between the house electrical supply line and the internal wiring feeds for the dishwasher, if there was enough slack left in the line by the installer or unless the dishwasher could not be slightly raised by adjusting the adjustable "feet" to avoid scraping the floor, which was dependent on the dishwasher and the counter height-however on these occasions Mr. Smith would replace the strain relief and reconnect the connections. (Exhibit 14 at 49-52; 117-119: 1: 137-140).

The Wuerstlin technician would not have performed the warranty work upon the dishwasher had the junction box been removed, or if it was missing, i.e the dishwasher was "not complete" to quote Mr. Smith, at the time of his service call. (Exhibit 14 at 60-61, 84-85)

Although the identity of everyone who worked on the dishwasher has not been disclosed by Plaintiffs insured or her agents, Plaintiff's expert Michael Schall who testified to his practice, and the importance of, carefully recording the witness's statements, recorded Margaret Rubino's admission that approximately 4 months before the fire the dishwasher had been serviced by an unknown service provider because the unit was not drying the dishes properly. (Exhibit 17 at 92-94, 100, 153-155).

While Mr. Schaal equivocated slightly about the four months, indicating that that was the date of service or the age of the unit-it is not disputed that the unit was almost two years old at the time of the fire, and thus the 4 months can only be attributed to the most recent service call. (Exhibit 17 at 92-93).

Mr. Schaal also discovered the presence of "fish tape", a tool used for pulling electrical lines, under the dishwasher, and concluded that its presence occurred form the time of the installation or when subsequent work was performed. (Exhibit 17 at 76). Mr. Smith did not use

fish tape for the service call in August 2004, and this was not used for Wuerstlin's work. (Exhibit 14 at 87-88). It is not known whether the service provider who addressed the drying problem approximately four months prior to the fire would have used fish tape.

With these facts from the record, Defendants move for Summary Judgment.

IV.    ARGUMENT OF SCUDERI

   A.    APPLICABLE STANDARDS

Summary Judgment is appropriate when, after review of the record, it is shown that there exists no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To defeat a pending Summary Judgment Motion, the non-moving party bears the burden of proving beyond the pleadings that there are factual disputes which are both material and genuine. Fed. R. Civ. P. 56 (e); See also, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Facts are material if they relate to the substantive law governing the case and will thus affect the outcome. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S. Ct. 2505, 91 L Ed. 22 (1986). The allegation of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no genuine dispute of material fact. Anderson at 477 U.S. 247-248 (emphasis in original). Thus, the non-moving party must create a genuine issue of fact supported by admissible evidence sufficient for a reasonable finder of fact to find in favor of it. Hinton v. Stein, 278 F. Supp. 2d, 27, 32 (D.D.C 2003). This is because the purpose behind Fed. R. Civ. P. 56 is to avoid unnecessary trials where no fact finding is needed. Anderson, at 477 U.S. 247-248.

B.   PLAINTIFFS' EVIDENCE IN THE RECORD IS
LEGALLY INSUFFICIENT SO AS TO REQUIRE
SUMMARY JUDGMENT IN FAVOR OF SCUDERI

It is an axiomatic principle of law that the mere happening of an accident does not give rise to the inference that liability rests with some person or entity and further that it is the Plaintiffs' burden to prove by a preponderance of the evidence some act by the Defendant which caused the loss. See e.g., Rajabi v. Potomac Electric Power Company, 650 A. 2d. 1319, 1321 (D.C. 1995). The purpose behind this principle is to insure that parties are not held responsible for allegations made against them as a result of evidence which is speculative or based on conjecture. The essential facts to fix liability on a Defendant must be proven, and inferences cannot merely be drawn from others inferences, but from instead these essential facts. See e.g., District of Columbia v. Vignau, 144 F. 2d 641, 642 (1944); cert. denied, 323 U.S. 781.

In the present case, there is a factual record as to the claims made against Scuderi that is so legally deficient, that to allow it to proceed to trial would cause findings based on rank speculation and conjecture. There is no affirmative, legally relevant evidence in the record, aside from Plaintiffs bare allegations,[4] which in any way implicates Scuderi as a cause of the fire at issue. The record is wholly devoid of any evidence which is legally sufficient to support a finding that Scuderi made the electrical connection to the dishwasher from the power supply in the Bernstein residence. Scuderi has affirmatively denied doing so and there is no relevant evidence which contradicts this fact.

All that is left for a fact finder to hear regarding Plaintiff's case against Scuderi is that a fire happened in the kitchen of the Bernstein residence on May 9, 2005, that the fire happened in or around the Bosch dishwasher therein, that Scuderi, among others, performed work on a renovation project of the residence some 2 years before the fire, that Scuderi did not connect the dishwasher, that there were "constant problems with the dishwasher during this intervening two

---

[4] Plaintiffs have alleged against Scuderi breach of contract, negligence and breach of warranty claims in their First Amended Complaint. All require proof of causation. However, and it is noted herein, Plaintiffs have come forth with no evidence whatsoever as to the existence of any warranty from Scuderi in this case, express, implied or otherwise. Aside from the issues raised in the body of this Motion, the warranty claim should be dismissed by the Court for this reason also.

11

year period, that an appliance repair service company performed work on the dishwasher in August 2004 and some nine months after this repair work the fire occurred. Moreover, and again, there will be no evidence that Scuderi connected the dishwasher at issue, his affirmative denials to the contrary being the only direct evidence on this issue.[5] When combined with the lack of evidence in the record that Scuderi had anything to do with the electrical connection of the dishwasher, the temporal gap between his presence at the Bernstein residence and the fire, the intervening and "constant" problems with the dishwasher during this gap as testified to by Ms. Bernstein, the access of others to the dishwasher and its electrical components and the service repair warranty work performed in August 2004, make it impossible for a jury to conclude, more likely than not, that Scuderi, as opposed to someone else or something else, caused the fire at issue in this case, absent relying on speculation, conjecture or guesswork of the worst kind. Summary judgment must therefore be granted in Scuderi's favor.

    C.    <u>PLAINTIFFS' ELECTRICAL ENGINEERING EXPERT, ROBERT NEARY, IS UNABLE TO RENDER AN OPINION REGARDING THE CAUSE OF THE FIRE</u>

As referenced in Scuderi's Statement of Material Facts to which there is no Genuine Dispute, Plaintiffs have designated an electrical engineer, Robert Neary, to testify regarding the cause of the fire.[6] Neary's essential opinion is that arcing among uninsulated and improperly

---

[5] Presumably, Plaintiffs will argue that Exhibit 2, ESTIMATE NO. 348, constitutes evidence that Scuderi performed the electrical connection to the dishwasher in question since he accepted payment for the work listed therein, part of which includes a $60.00 charge for work related to re-wiring the dishwasher. First, Scuderi has testified that ESTIMATE 348 was not an accurate depiction of all electrical work performed by him at the Bernstein residence, that informal changes were made to the scope of work outlined therein and that he performed other electrical work during the renovation not reference for which he did not charge nor for which he was paid. Scuderi admits that he did not connect the dishwasher, and if Plaintiffs have any claim remaining against him, it is for return of this $60.00 charge, plus perhaps interest. To find otherwise would seem to stand contract actions on their heads, since every time a party was sued for failing to perform under a contract, it could simply raise as a defense that it received payment which constituted evidence therefore that the work was performed, a boon to the breaching party but certainly not helpful to aggrieved Plaintiffs.

[6] The Plaintiffs have also designated a mechanical engineer, Kenneth McLauchlan, in addition to Neary. McLauchlan is not an electrical engineer, as are Neary and Defendants two experts, Dale Benedick and Terrance Duvall. McLauchlan was designated by Plaintiffs to rebut the report of the District of Columbia Fire Marshall's Office, which investigated the fire and concluded that it most likely resulted from a mechanical problem. McLauchlan's field of expertise is in **mechanical engineering**, not **electrical engineering**. Plaintiffs are proceeding on a theory that an **electrical** problem caused the fire, not a **mechanical** problem and have likewise not sued the manufacturer of the dishwasher, Bosch. To the extent that Plaintiffs might try to circumvent Neary, their **electrical** engineer's, testimony by "back dooring" Mclauchlan, and attempting to elicit opinions from their **mechanical** engineer, Scuderi and Wuerstlin note that a Motion for Summary Judgment must be opposed by **admissible** evidence.

connected ROMEX wires to the dishwasher caused heating in the electircal wiring, causing a short or failure which in turn caused ignition of combustible material in the dishwasher. (Exhibit 18 at 211-212, 218-220). According to Neary, this arcing is evidenced by beads (bumps on the wire caused by heat from the fire) on the wire. (Id., at 220-221). Neary, however, was unable to testify whether the evidence of the arcing the he claims to have observed on these wires to the dishwasher was a cause or, instead, a victim of the fire (Id., at 236-237). That is, based upon the information available to him, Neary is unable to render an opinion, more probably than not, that this alleged evidence of arcing present on the wire happened before the fire, thus allegedly causing it or, after the fire, thus caused by it. (Id.) If the beading occurred after the fire, then there is no logical way to determine whether there was pre-fire arcing or, instead, post fire beading. Neary's opinions, therefore, on the cause of the fire are hollow and inadmissible.

The primary purpose of expert testimony is to assist the trier of fact in determining the evidence. See e.g. U.S. v. Morrow, 374 F. Supp. 2d 51, 60 (D.D.C. 2005), citing, Fed. R. Evid. 702. It is a proper function of the District Court to make a preliminary assessment of an expert opinion to determine its reliability. See, Dyson v. Winfield, 113 F. Supp. 2d 44, 47 (2000). At this instance, Neary's inability to testify to a degree of probability that the mechanism which he believes evidences the cause of the fire actually happened before or after, and as a result of, the fire, renders his "opinion" useless to the finder of fact and inadmissible. Without this, Plaintiffs are left with no **admissible** expert opinion as to the cause of the fire, an essential element of their cases. Summary Judgment should likewise be granted on this ground also.

V.     WUERSTLIN'S ARGUMENT IN SUPPORT OF SUMMARY JUDGMENT

    A.     DEFENDANT WUERSTLIN INCORPORATES HEREIN BY REFERENCE THE LEGAL ARGUMENTS SET FORTH IN DEFENDANT SCUDERI'S SECTION IV, ABOVE.

    B.     THE EVIDENCE OF RECORD, AS A MATTER OF LAW, DOES NOT SUPPORT AN ACTION AGAINST DEFENDANT WUERSTLIN

Plaintiffs' mere speculation does not constitute evidence of liability. Plaintiffs allegations of negligence on the part of Defendant Wuerstlin are based solely upon mere speculation. The

only evidence as to what Wuerstlin's did or did not do comes from the testimony of the technician Thomas Smith, which has not been rebutted. While Plaintiffs are certainly not bound by this testimony, they still need to produce some affirmative evidence to establish that some act or omission of Wuerstlin was negligent. Plaintiffs do not have any direct proof, and as conceded by their experts, they do not have any circumstantial or other evidence which would justify a jury finding that Mr. Smith, the technician, must have committed a negligent act or omission. The jury will hear uncontradicted evidence that the electrician left sufficient slack on an acceptable BX supply cable, and never connected the dishwasher. The jury will hear that uncontradicted testimony that nine months before the fire Mr. Smith replaced the circulation motor which would, given the slack left by the licensed electrician, would not have required disconnecting the supply line to the internal wires, and in no way would have led to the removal of a factory provided junction box. The jury will hear that all of the experts agree that when there is sufficient slack in the line, one would not need to, nor customarily or typically, disconnect the internal connections, particularly when, as in this case, there was a Code required power disconnect switch installed on the supply line. The jury will then hear, from statements carefully and accurately recorded by Plaintiffs own experts for Plaintiffs' agents that several months after Wuerstlin's work, a new problem wholly unrelated to the circulating pump replacement, appeared, and a different service company was called. Plaintiffs' insured and her agents, the only party with knowledge of the appearance/ <u>and</u> proof, have provided no evidence as to who actually fixed this problem, when it was fixed, and most significantly how it was addressed. All that is known, and that Plaintiffs have disclosed, is that thereafter they continued to use the dishwasher without this problem up to the time of the fire. It is crucial to note that then new problem was repeatedly described as a failure to dry the dishes completely, a problem which no reasonable juror could mistake for a problem with the pump that causes the water to flow and spray.

     It is against his backdrop that the elements of Plaintiffs' case must be weighed to determine even in the light most favorable whether there is nay probative evidence or inferences therefrom, which, as a matter of law, should prevent the entry of summary judgment. The

Plaintiff bears the burden to prove an unbroken sequence of events that tied his injuries to the Defendant's conduct. West Disinfecting Co. v. Plumber, 44 APP. D.C. 245 (1916). To prevail, Plaintiff must show the existence of a duty, breach of that duty, a causal connection and actual injury, A Plaintiff must establish that the Defendant's conduct legally caused the injury, but because actual causation, in theory, is virtually limitless, the causal connection must be based upon more than conjecture and surmise. Id. at 355. Thus, proximate cause is often the issue. The fundamental inquiry of proximate cause determines whether the harm that occurred was within the scope of foreseeable risk created by the Defendant's negligent conduct. Sanders v. Wright, 642 A.2d 847, 849 (D.C. App. 1994). In negligence cases, the question of proximate cause is usually on of fact for the jury, however, it becomes a question of law when the evidence adduced at trial will not support a rational finding of proximate cause. Id.

      The evidence concerning what was actually done during Wuerstlin's unrelated warranty work is far too attenuated to satisfy the elements of negligence. Plaintiffs cannot prove an unbroken sequence of events to tie Wuerstlin's warranty work on the dishwasher's circulating pump to the cause of the fire.

      Further weakening the Plaintiffs case is the absence of close temporal proximity to establish a causal connection between Wuerstlin's warranty service and the fire, given the passage of nine months. Plaintiffs cannot even prove that Wuerstlin maintained exclusive control of the dishwasher and that there were intervening events between Wuerstlin's work and the fire. Plaintiffs cannot prove even liability within a known universe of users, that none of Ms. Bernstein's multitude of employees or handymen, or others who serviced the dishwasher after Wuerstlin's work. Plaintiffs cannot prove that the cause of the fire to a degree of probability, but worse, cannot even prove that whatever caused the fire existed before or after Wuerstlin's work, let above prove that Wuerstlin's work in any way cased the fire. Thus, the summary judgment is appropriate.

VI.   CONCLUSION

Based upon the foregoing, Defendants Paul A. Scuderi, Inc. and Wuerstlin Appliance Service respectfully request that Summary Judgment be granted in their favor.

Respectfully submitted,

ANDERSON & QUINN, LLC

/s/ John A. Rego
John A. Rego #422378
25 Wood Lane
Rockville, Maryland 20850
(301) 762-3303
*Counsel for Paul A. Scuderi*

LAW OFFICE OF EDWARD J. BROWN, LLC

/s/ Edward J. Brown
Edward J. Brown
3290 N. Ridge Road, Suite 210
Ellicott City, Maryland 21043
(410) 465-5291
*Counsel for Wuerstlin Appliance Services*