IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

|  |  |  |
|---|---|---|
| FEDERAL INSURANCE COMPANY | : | C.A. NO. 1:06CV00379. |
|  | : | Magistrate Judge Alan Kay |
| and | : |  |
|  | : |  |
| HARTFORD CASUALTY | : |  |
| INSURANCE COMPANY | : |  |
|  | : |  |
| Plaintiffs | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| LANDIS CONSTRUCTION CORPORATION | : | **EXHIBIT 2 FOR PLAINTIFFS'** |
|  | : | **JOINT RESPONSE TO DEFENDANT** |
| and | : | **LANDIS' MOTION FOR SUMMARY** |
|  | : | **JUDGMENT** |
| WUERSTLIN APPLIANCE SERVICE | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| MR. PAUL SCUDERI | : |  |
|  | : |  |
| Defendants. | : |  |

**Page 1**

1  U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
2           Civil Division
3  --------------------------------:
4  FEDERAL INSURANCE COMPANY,      :
5       and                        :
6  HARTFORD CASUALTY INSURANCE     :
7  COMPANY,                        :
          Plaintiffs   : Case No.
8  v.                   : 1:06CV00379
   LANDIS CONSTRUCTION CORPORATION :
9       and                        :
10 WUERSTLIN APPLIANCE SERVICE     :
11      and                        :
12 PAUL SCUDERI, INC.,             :
13      Defendants                 :
14 --------------------------------:

15      Deposition of CHRISTOPHER K. LANDIS
16           Rockville, Maryland
17         Tuesday, April 10, 2007
18              12:39 p.m.
19
20 Job No.: 1-100149
21 Pages 1 - 61
22 Reported By: Susan B. Fillmore, R.P.R.

**Page 2**

1
2        Deposition of CHRISTOPHER K. LANDIS,
3  held at the offices of:
4      ANDERSON & QUINN, LLC
5      ADAMS LAW CENTER
6        25 Wood Lane
7        Rockville, Maryland 20850
8        301.762.3303
9
10
11
12
13      Pursuant to Agreement before Susan B.
14 Fillmore, Registered Professional Reporter and
15 Notary Public for the State of Maryland
16
17
18
19
20
21
22

**Page 3**

1           A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF FEDERAL INSURANCE COMPANY:
3      MARK E. UTKE, ESQUIRE
4      COZEN O'CONNOR
5      1900 Market Street
6      Philadelphia, Pennsylvania 19103-3508
7      215.665.2164 and 800.523.2900
8
9  ON BEHALF OF PLAINTIFF HARTFORD CASUALTY
10 INSURANCE COMPANY:
11     BRIAN E. TETRO, ESQUIRE
12     WHITE AND WILLIAMS, LLP
13     1800 One Liberty Place
14     Philadelphia, Pennsylvania 19103-7395
15     215.864.7000
16
17 ON BEHALF OF DEFENDANT LANDIS CONSTRUCTION COMPANY:
18     ALLAN A. NOBLE, ESQUIRE
19     BUDOW AND NOBLE, P.C.
20     7315 Wisconsin Avenue, Suite 500 West
21     Bethesda, Maryland 20814
22     301.654.0896

**Page 4**

1        A P P E A R A N C E S (Continued)
2  ON BEHALF OF DEFENDANT WUERSTLIN APPLIANCE SERVICE:
3      EDWARD J. BROWN, ESQUIRE
4      McCARTHY WILSON, LLP
5      100 South Washington Street
6      Rockville, Maryland 20850
7      301.762.7770
8
9  ON BEHALF OF DEFENDANT PAUL SCUDERI, INC.:
10     JOHN A. REGO, ESQUIRE
11     ANDERSON & QUINN, LLC
12     Adams Law Center
13     25 Wood Lane
14     Rockville, Maryland 20850
15     301.762.3303
16
17 ALSO PRESENT:  Paul A. Scuderi
18         William C. Sennett, Erie Insurance
19
20
21
22

---

**29**

1  Landis, as I mentioned before, uncrated the
2  dishwasher, put it in place and leveled it. Andrew
3  called the plumber. The plumber hooked it up. And
4  at some point it was connected to the countertops.
5      Q   Okay. When was the electrical connection
6  to the dishwasher?
7      A   Don't know.
8      Q   Do you know if Mr. Kerr or anyone else at
9  Landis coordinated for the electrical hookup?
10     A   There is something in the notes that says
11  Andrew called John (sic) Scuderi and informed him
12  that appliances were ready to hook up.
13     Q   When you spoke to Andrew, did you ask him
14  specifically about whether he called Mr. Scuderi for
15  the electrical hookup to the dishwasher?
16     A   That is what it says in the notes.
17     Q   Well, I'm asking for your personal
18  knowledge as to whether --
19     A   I don't have any personal knowledge other
20  than what Andrew has told me subsequent to the
21  fire.
22     Q   And what notes are you referring to?

---

**30**

1          MR. NOBLE:  They're in the responses.
2          MR. UTKE:  Okay.
3          MR. NOBLE:  If that will help it along.
4          MR. UTKE:  I can't seem to find it.
5          MR. NOBLE:  Off the record.
6          (Discussion off the record.)
7  BY MR. UTKE:
8      Q   So we can go back on. So you had a
9  conversation with Mr. Kerr. He spoke of a telephone
10  call that he made to Mr. Scuderi?
11     A   I believe so.
12     Q   Do you know when this conversation took
13  place between you and Mr. Kerr?
14     A   Not exactly.
15     Q   Well, do you know if it was a year ago or
16  whether it was immediately after the fire? Are you
17  able to give me any kind of time frame?
18     A   It would have been in maybe the last month
19  or two.
20     Q   Are you aware of any other electricians or
21  individuals that were working on electric at that
22  job site? .

---

**31**

1      A   No.
2      Q   So in terms of the subcontractors that
3  were on-site, was anyone from Downs Plumbing hooking
4  up electric?
5      A   No.
6          MR. BROWN:  Objection.
7  BY MR. UTKE:
8      Q   Is the basis for you saying that that you
9  just didn't see anyone from Downs doing that, or do
10  you actually know that people from Downs Plumbing
11  didn't do any kind of electrical connection?
12     A   I didn't see it, and they weren't
13  contracted to do it.
14     Q   Is it your testimony that only --
15     A   Plumbers generally don't hook up
16  electrical things.
17     Q   Okay. And in this case, his invoice
18  indicates that he strictly did plumbing work?
19         MR. BROWN:  Objection.
20  BY MR. UTKE:
21     Q   You have to answer verbally.
22     A   Yes.

---

**32**

1      Q   Okay. In terms of the contractors that
2  are coming and going from the job site, is there
3  anybody who's going to be in charge, or who was in
4  charge of access to the site?
5      A   It was, the scope of work was strictly
6  related to her kitchen, and there was a side entry
7  just off of the kitchen. But there was a side entry
8  that had a lock, and there was also a gate to get
9  into sort of a little walking alleyway.
10  Mrs. Bernstein is an older lady. It's a large
11  building, and it also has ten other tenants in the
12  building. And I forget exactly how the arrangements
13  were made to get in there.
14         She also had a building manager, so that
15  would be something that we would need to talk to
16  Andrew about, whether he had to call ahead and get
17  let in. Traditionally, we all have a lockbox on the
18  job that you can go get the key and let yourself in.
19  I remember the gate on the alley was electronic,
20  though. So you'd probably knock on her front door,
21  and then you would go over to the gate and she'd
22  buzz you in. She tended to be there quite a bit or

---