IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| FEDERAL INSURANCE COMPANY : | |
| and : | |
| HARTFORD CASUALTY INSURANCE : COMPANY : | |
| Plaintiffs : | |
| v. : | Case No. 1:06CV00379 |
| : | Magistrate Judge Alan Kay |
| LANDIS CONSTRUCTION : CORPORATION : | |
| and : | |
| WUERSTLIN APPLIANCE SERVICE : | |
| and : | |
| PAUL A. SCUDERI, INC. : | |
| Defendants : | |

### DEFENDANT PAUL A. SCUDERI, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendant, Paul A. Scuderi, Inc., through counsel, files this Reply Memorandum in response to Plaintiff's Opposition to the Motion for Summary Judgment of Paul A. Scuderi, Inc.

I.  PLAINTIFF'S OPPOSITION FAILS TO SET FORTH ADMISSIBLE EVIDENCE SUFFICIENT TO CREATE DISPUTES OF MATERIAL FACTS WHICH FIX LIABILITY ON THIS DEFENDANT

Plaintiffs' theory in support of liability against Scuderi, as set forth in their Opposition; can be distilled down to this: Scuderi contracted to perform electrical work to the Bernstein residence as part of a renovation in 2003, part of that work was the re-wiring of a new dishwasher, it re-wired the dishwasher negligently, it accepted payment for the re-wiring and therefore is liable for the fire. The admissible facts in evidence, however, are that Scuderi agreed to perform electrical work to the Bernstein residence in 2003, that it performed some electrical work pursuant to an estimate (Estimate No. 348), that it performed other electrical work not listed on this estimate and beyond its scope, that it never wired the new dishwasher as reference in the estimate and that it accepted payment "in block" and not itemized for all electrical work, including that not listed therein. This version is supported by the admissible, material facts and

Plaintiffs have set forth no legal theory under these facts by which Scuderi could be held liable.

In order to defeat Defendant's Motion for Summary Judgment, Plaintiffs must introduce both competent, admissible evidence which then creates material factual disputes that can affect the outcome of the case. This was distinctly stated by the Court in Hinton v. Stein, 278 F.Supp.2d, 27, 32 (D.D.C. 2003), wherein it was held that the non-moving party in opposing a Motion for Summary Judgment must create a genuine issue of fact supported by admissible evidence sufficient for a reasonable finder of fact to find in favor of it. Therefore, not all inferences that can be drawn from the facts are sufficient to defeat a Motion for Summary Judgment. Instead, the inferences must be reasonable and must lead to the production by the non-moving party of essential facts which would fix liability on the Defendant. In other words, it is not proper for a Plaintiff to create inferences which merely lead to other inferences from which a jury must draw a conclusion, but instead any inferences drawn must support essential facts necessary for the Plaintiffs to prove their case. See, e.g., District of Columbia v. Vignau, 144 F. 2d 641, 642 (1944); cert. denied, 323 U.S. 781.

Plaintiffs, in their Opposition at pages 3 through 9, admit for the most part to the vast majority of the facts cited by Scuderi in support of its Motion for Summary Judgment. The "disputes" are relatively few, mainly immaterial, often inadmissible and generally built upon inferences which themselves were built upon inferences. This is the first main problem with Plaintiffs case, namely, that there is no direct evidence whatsoever regarding who, how or when the subject dishwasher at issue was connected to the electrical supply at the Bernstein residence, or, for that matter, which particular connection allegedly caused the fire. Based upon the discovery in this case, and the candid admissions in Plaintiff's Opposition, there will be no direct evidence which can fix this essential element of Plaintiff's case on any particular Defendant or, for that matter, any non-Defendant. Instead, Plaintiff's case is wholly circumstantial. While not fatal in and of itself, the "circumstances" upon which Plaintiff relies are often times so indirect and built upon other "circumstances" as to warrant a finding that only an "unreasonable mind" could reach.

2

For example, Plaintiffs in their Opposition at page 4, concede that there is no written document (other than Estimate No. 348, which was attached to Scuderi's Motion) which verifies any electrical work done by Scuderi at the Bernstein residence. It is important to note, and this was raised by Scuderi in its Motion for Summary Judgment, that Estimate No. 348 references the re-wiring of the dishwasher in its existing location. However, and the only competent evidence in the record, is that Scuderi did not re-wire the dishwasher and denies ever doing so. Moreover, there is no evidence whatsoever in the record which suggests by whom, how or when the dishwasher was initially wired to the electrical connections in the Bernstein residence. This is well documented in Scuderi's Material Statement of Facts Not in Dispute filed with its initial Motion for Summary Judgment.

Plaintiffs seem to suggest, without any supporting case law, that the mere fact that a party agrees to perform some service and is paid for that service is sufficient, legal, competent evidence that the service was actually performed or, even gives rise to an inference that the service was performed. This is simply an incorrect statement of law or evidentiary proof. The reason why there is no legal support cited in support of Plaintiffs' argument in this regard is that to find so would stand contract law on its head, since every time a party was sued for failing to perform under a contract, it could simply raise as a defense that it had agreed to perform such work, received payment and thus the work must have been performed because it agreed to do so and has paid for it. In essence, Plaintiffs' attempts to prove their case by this twisted logical theory would remove a great number of breach of contract actions from the Courts dockets but leave many Plaintiffs without a remedy, which is certainly not the state of contract actions in this jurisdiction today.

Perhaps more import to this specific case, Scuderi has testified without contradiction, that Estimate No. 348 was not an accurate depiction of all the electrical work performed by him at the Bernstein residence, that informal changes were made to the scope of work outlined therein and that he performed other electrical work during the renovation not referenced for which he did not charge nor for which he was paid. These facts are cited in Scuderi's Motion for Summary

3

Judgment at Exhibit 1, pages 109-110 and Exhibit 4, Scuderi's Answers to Plaintiff's Interrogatories, nos. 10 and 25 and remain uncontradicted. The importance of this is that Scuderi was not paid for specific items of electrical work performed at the Bernstein residence but instead for "blocks" of work performed. See, Exhibit 1 to Scuderi's Motion for Summary Judgment, page 109.

In fact, the $60.00 charge for re-wiring the dishwasher to the electrical supply, which Scuderi admittedly did not do, also included the relocation of the existing dishwasher circuit, the installation of a switch box under the sink and the installation of "BX" cable of sufficient length in the switch box to ultimately be connected to the dishwasher, all of which it did do. Id., at page 110. Of the three "block" checks received by Scuderi for his work at the Bernstein residence, none is less than $1,000.00 in amount. This $60.00 charge also amounted to only slightly more than 1% of the total amount paid to Scuderi by Bernstein for all electrical work performed. See, Exhibit 6 (a)-(c) attached to Scuderi's Motion for Summary Judgment. The fact that Estimate No. 348 called for re-wiring of the dishwasher to be performed, which was not, and the fact that Scuderi was paid in block form to perform other work listed on Estimate No. 348, as well as additional work not listed therein, is not sufficient to raise a legally competent inference which would counter his direct testimony that he simply did not re-wire the dishwasher as alleged by Plaintiffs. In this regard, Scuderi stands in no different position that of Sal Fioritto, who denied wiring the dishwasher at issue, than Bernstein's personal master electrician, Fitzalbert Barclay, who also denied wiring the dishwasher at issue or any other witness who has testified in this case and denied wiring the dishwasher at issue. There is no competent proof that he did it, any more so or less so than there is that they did it.

The same argument can be made regarding Plaintiffs' "dispute" that Scuderi never left a "BX" cable connected to the switch box which should have ultimately have been connected to the dishwasher. Plaintiff's claim in their list of Disputed Facts, No. 17 at page 4 of their Opposition, that since "Romex" wiring was found connected to the dishwasher at the scene after the fire occurred, this somehow suggests that Scuderi initially, two years before the date of the

fire, connected the dishwasher with non-BX cable. What Plaintiffs fail to point out is that there is ample testimony that intervening persons performed work on the dishwasher prior to the fire which necessitated a disconnection of the electrical power. In fact, this is Plaintiff's theory against Defendant Wuerstlin Appliance. Moreover, there is simply no evidence in the record to dispute Scuderi's testimony, under oath, that he left, at the last time he saw the dishwasher prior to it being connected by someone, a "BX" (metal clad) cable hanging from the switch box of sufficient length to make the final connection to the dishwasher. As with all the other witnesses in this case, by whom that connection was ultimately made, how it was ultimately made and when it was ultimately made is unknown to Scuderi.

Even further, and perhaps most important, is the fact that in the records produced by Scuderi, which again are attached to his Motion for Summary Judgement as exhibits 5(a) through 5(e), there is nothing to suggest that Scuderi ever purchased or used anything other than "BX" cable on this job and there is certainly nothing in the record through any of the testimony, Answers to Interrogatories or documents produced that suggest or in any way infers that Scuderi ever used "Romex" wire on this job or purchased "Romex" wire for this job to be used. In fact, the only evidence in the record and the only testimony in this case is that Scuderi used only "BX" cable for this job and that it was his regular practice to do so because it was "self-grounding". Therefore, what Plaintiffs are asking a jury to do in this case is to find Scuderi liable for a fire which occurred two years after the dishwasher was initially connected, after any electrical work which it performed was completed several months before repair personnel unrelated to Scuderi performed electrical work on the dishwasher and in the absence of any evidence that Scuderi ever used, purchased or installed at any time during the Bernstein renovation "Romex" wire for any of the electrical work which he performed. This would cause the jury to engage in rank speculation and conjecture without any essential facts to fix liability on Scuderi. The mere fact that Plaintiffs baldy "deny" or "dispute" that "BX" wire was used by Scuderi does not overcome their burden of setting forth competent, admissable evidence that Scuderi ever used Romex on this job.

5

II.   PLAINTIFF'S OPPOSITION FAILS TO SET FORTH LEGALLY SUFFICIENT EVIDENCE AS TO "WHO" CONNECTED THE DISHWASHER AT ISSUE AND "WHO" CAUSED THE FIRE

The way that this case is presently postured presents 3 basic issues, first who electrically connected the dishwasher at issue during the renovation, was it that connection or, some other subsequent connection; that caused the fire and what mechanism within the dishwasher actually caused the fire. Resolution of these issues requires both fact and expert testimony. For the purposes of this Reply only, and not waving the right to filing future Motions regarding the deficiencies of Plaintiffs' expert testimony, this portion of the Reply will focus on the issue of "who" and not "what" caused the fire.

In this regard, there are insufficient admissible material facts set forth by Plaintiffs that would allow for a finding that Scuderi connected the dishwasher at all, and certainly not the connection that caused the fire. Again, there is no direct evidence in the record nor has any witness to date come forth with knowledge as to who initially connected the dishwasher during the renovation at the Bernstein residence in the spring and summer of 2003, some two years before the fire. Moreover, there is ample evidence in the record and evidence from Ms. Bernstein herself, that the dishwasher experienced problems during this two year period which required repair and warranty work to be performed. According to the Plaintiffs own theory and evidence in this case, any such repair or warranty work would require that the electrical connection to the dishwasher itself be disconnected or altered in a way to allow the repair person to pull the dishwasher from underneath the counter in the Bernstein kitchen where the dishwasher was located.

Further, the dishwasher, at the time of the fire, was connected to its power supply with a Romex electrical cable. As stated above and, as the only evidence in the record shows, Scuderi never used or purchase Romex wire for this particular job and there is no evidence at all which counters the direct testimony of Paul Scuderi that he used only "BX" electrical cable during his work at the Bernstein residence. The fact that Romex wire was found attached to the dishwasher some two years after Scuderi completed any electrical work at the Bernstein residence and after

the fire does not raise an inference that Scuderi attached that Romex cable to the dishwasher two years earlier. Again, the only competent evidence in the record is that he made no such electrical connection, that he never used or purchased Romex cable for this job and that there is no witness, fact or piece of evidence which is legally admissible and based upon a proper legal theory that would allow for such a finding by a jury.

Looking to some of the specific facts on this issue cited by Plaintiffs in their Opposition, that is, those facts which Plaintiffs intend to use to counter this overwhelming evidence against them, it is apparent that they are based on heresay, speculation or conjecture. For example, at page 6 of their Opposition, "disputed fact" No. 49, Plaintiffs suggest that somehow Margaret Rubino's testimony in her deposition that the dishwasher had to have been wired by either Scuderi or Landis Construction because she was one of "Bernstein's consultants for the renovation project" after Plaintiffs admit in the sentence prior to that "Mrs. Rubino has no personal knowledge of who provided the electrical connection to the dishwasher at issue" is exactly the type of inadmissible evidence upon which Plaintiffs rely as "disputed facts" in their Opposition. Moreover, and as not pointed out by Plaintiffs in their Opposition, the deposition question and Mrs. Rubino's answer were objected to by counsel on the grounds that her testimony was inadmissible speculation, which it clearly is.

Regarding other "facts" that Plaintiffs claim are undisputed in their Opposition and relating to the issue of "who" connected the dishwasher and not "what" caused the fire, there are again several inadmissible statements. For example, "undisputed fact" No.30 at page 14 of their Opposition is taken from testimony of the deposition of Sal Fiorito wherein Mr. Fiorito opined and speculated, over objection and a Motion to Strike, that "Scuderi hard-wired the dishwasher since he was the only electrician on the project". This testimony came in the same deposition wherein Fiorito had already testified that he did not know who connected the subject dishwasher. "Undisputed fact" No.31 is similar in nature, involving testimony by Andrew Kerr, an employee of Landis Construction. Plaintiffs cite in their Opposition at page 14, that in Mr. Kerr's opinion, "Scuderi handled all of the electrical work because he was contracted to do the electrical work".

7

Again, this speculation by Mr. Kerr is not admissible and is in contradiction to his direct testimony, as set forth in Scuderi's Motion for Summary Judgment, that Kerr has no knowledge of who made the electrical connection to the dishwasher. Similarly, "undisputed fact" No.35 in Plaintiffs' Opposition states that "if Scuderi did not perform the electrical connection, the dishwasher would not work". This bootstrapped conclusion, again, is based upon an inadmissible assumption that Scuderi actually performed the electrical work connecting the dishwasher to the electrical supply during the renovation in disregard the lack of any fact to support the conclusion. The statement, instead, in order to be accurate and admissible would have to be that "if <u>someone</u> did not perform the electrical connection, the dishwasher would not work". That "someone", is not and was not Scuderi as based upon the record in this case. Further, "undisputed fact" No.37, a statement by Andrew Kerr again, where he references "that is was improper for Scuderi to leave the task of hard-wiring the dishwasher connection for someone other than himself to complete" is not only a self serving statement but an impermissible opinion rendered by a witness not designated by Plaintiffs as an expert in this case on any issue regarding electricity or electrical standards.

    For these very reasons, Plaintiffs' "undisputed facts" Nos.24 and 25 at page 13 of their Opposition are also inadmissible and, more important, irrelevant since they are neither permissible opinions nor are they opinions which are based on the facts and evidence in this case or relevant District of Colombia law. In fact, Plaintiffs' designated electrical engineering expert Robert Neary, who made these statements, actually testified in his deposition that "the electrician of record is responsible for all electrical work performed unless he notifies the parties that he did not do his work" is a principle generally employed by electricians to protect the electrician in the event that some other person performs work without the electrician's knowledge or permission, not to protect, instead, the homeowners. Thus, "undisputed facts" Nos.24 and 25 in Plaintiffs' Opposition are irrelevant to Plaintiffs' claims against Scuderi because the testimony cited therein (and it is certainly not conceded or maintained by Scuderi that this testimony is admissible) is a standard not designed to protect Plaintiffs or Mrs. Bernstein but, instead, designed to protect

8

Scuderi. Plaintiffs cannot rely on such a standard in supporting their claims in this case against Scuderi when it purpose is not for their benefit. See, Neary deposition at pages 369-372.

For these reasons, the "undisputed facts" cited by Plaintiffs in their Opposition are neither relevant, material, admissible nor can they be used to support Plaintiff's claims in this case. They are simply statements based upon heresay, speculation or inadmissible opinion and do not establish competent evidence by which Plaintiffs can counter Scuderi's Motion for Summary Judgment. They do not assist a trier of fact in resolving the issue of "who" made the connection to the dishwasher at any time prior to the fire and do nothing to allow that trier of fact to reach a reasonable conclusion based on admissible evidence, without regarding to speculation or conjecture, that would warrant a finding of liability against Scuderi.

III.  PLAINTIFF'S EXPERT OPINIONS AND QUALIFICATIONS ARE INSUFFICIENT AND INSUFFICIENTLY BASED SO AS TO RENDER THEM INADMISSABLE

The insufficiency of the "opinions" rendered by Plaintiffs' expert witnesses, Robert Neary and Kenneth McLaughlin, were touched upon in Defendants' Motion for Summary Judgement and will be addressed in the future in a more appropriate Motion in Limine or "Daubert" Motion by the Defendants; if necessary. Suffice it to say that until Plaintiffs come forth with competent, material, admissible evidence to establish "who" made the particular dishwasher connection that allegedly caused the fire, the issue of "what" mechanism caused the fire does not assist them, at this juncture, in defeating the Motion for Summary Judgment. As the record currently stands, there are competing experts on the issue of "what" which opine that the fire was caused by a faulty electrical connection (Plaintiffs) or a manufacturing problem with a dishwasher component (Defendants). A dispute of the expert "opinions" can only ultimately benefit the Defendants as this evidence, from Defendants' perspective, leads to a cause of the fire wholly unrelated to any of the Defendants' alleged actions. It is not the "dispute" of these opinions that Defendants were highlighting in their Motion for Summary Judgment for support thereof, but, were instead, pointing out to the Court the lack of foundation or bases for the

9

Case 1:06-cv-00379-AK   Document 62   Filed 07/14/2008   Page 10 of 12

Plaintiffs' expert opinions.

If or until the Plaintiffs are able to solve the "who" portion of the liability equation in this case, and based on the evidence in the record to date they surely cannot, the "what" opinions regarding the cause of the fire, even if a finder of fact believed Plaintiffs' experts theories, are insufficient in and of themselves to allow for a finding of which, if any, of the Defendants, made the fateful electrical connection to the dishwasher. In other words, even if reasonable finders of fact concluded that the fire was caused by a faulty electrical connection, they would still be left without any competent, material, admissible evidence from the record in this case to identify by whom or, even when, the connection was made. Thus, at this juncture, Plaintiffs' expert "opinions" do not assist in establishing the essential facts necessary to fix liability on any particular defendant or to defeat Defendants' Motion for Summary Judgment. Simply stated, no witness in this case knows, fact or expert, and no witness will ever know, who connected the Bosch dishwasher at issue.

Respectfully submitted,

ANDERSON & QUINN, LLC

/s/ John A. Rego
John A. Rego #422378
25 Wood Lane
Rockville, Maryland 20850
(301) 762-3303
*Counsel for Paul A. Scuderi, Inc.*

10

## REQUEST FOR HEARING

Defendant, Paul A. Scuderi, Inc. respectfully request a hearing on all issues relating to its Motion for Summary Judgment.

/s/ John A. Rego
John A. Rego #422378

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2008 a copy of the foregoing was served via electronic filing and first-class mail, postage prepaid upon:

Eric N. Stravitz, Esquire
2000 Massachusetts Avenue
Suite 200
Washington, DC 20036
*Counsel for Plaintiffs*

Edward J. Brown, Esquire
The Law Office of Edward J. Brown, LLC
3290 N. Ridge Road
Suite 210
Ellicott City, MD 21043-3363
*Counsel for Wuerstlin Appliance Service*

Allan A. Noble, Esquire
Michael J. Budow, Esquire
Budow & Noble, PC
Suite 500 West, Air Rights Building
7315 Wisconsin Avenue
Suite 600
Bethesda, MD 20814
*Counsel for Landis Construction Company*

Mark E. Utke, Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Plaintiff Federal Insurance Company*

Brian E. Tetro, Esquire
White & Williams, LLP
1800 One Liberty Place
Philadelphia, PC 19103
*Counsel for Plaintiff Hartford Insurance Company*

/s/
John A. Rego